BACCUS, County Treas., (REEDER, Intervener) v. BANKS.

No. 32427.   Oct. 28, 1947.

Rehearing Denied Jan. 6, 1948.

*192 P. 2d 683.*

Raymond T. Plumlee, Co. Atty., of Cordell, for plaintiffs in error.

Jones & Wesner, of Cordell, for A. F. Reeder, intervener.

A. J. Welch and Milton Keen, both of Clinton, for defendant in error.

Holloway & Holloway, of Oklahoma City, Randall Pitman, City Atty., of Shawnee, Walter H. Thomas, City Atty., of Woodward, Forrest M. Divine, City Atty., of Hugo, Charles W. Jennings, City Atty., of Lawton, Norman E. Reynolds, W. Otis Ridings, and Norman E. Reynolds, Jr., all of Oklahoma City, and James F. Haning, of Wewoka, amici curiae.

HURST, C.J. In March, 1929, the city of Cordell created paving district No. 8, paved the streets in said district, levied special assessments, and issued bonds under the 1923 paving law, 11 O.S. 1941 §81-117. The assessments and bonds became delinquent on March 17, 1939. The plaintiff, W. F. Banks, owned a lot in said paving district on which the assessment had not been paid. In October, 1945, Vernon Baccus, county treasurer of Washita county, advertised the lot for sale at the November, 1945, delinquent tax sale to satisfy such special assessment. The amount of the special assessment and interest thereon then amounted to $672.62. On October 29, 1945, Banks commenced this action against the county treasurer to enjoin the sale of the same to satisfy the special assessment. A. F. Reeder, owner of bonds No. 34-39, inclusive, issued against said paving district, was allowed to intervene in the case.

In his petition, the plaintiff alleged that prior to the filing of this action, the lien for special assessments had ceased to exist by reason of the provisions of section 1 of article 6 of chapter 33, p. 156, Session Laws of 1939, 11 O.S. 1941 §242, in that the owners of the bonds issued against said paving district had commenced no suit to enforce this special assessment lien. The county treasurer filed an answer admitting that the plaintiff owned the lot in question, admitting the levy of the special assessment and the issuance of the bonds and the delinquency of the assessments and that the intention was to sell the lot for said special assessment at the November, 1945, delinquent tax sale, and alleging that the plaintiff had

an adequate remedy in law. The intervener filed an answer alleging that 11 O.S. 1941 §242, in so far as it attempted to extinguish the special assessment lien, impaired the obligation of his contract and was unconstitutional, and he further alleged that the plaintiff had an adequate remedy at law by payment of the special assessment and suing as provided by 68 O.S. 1941 §15.50.

To the answers of the defendant and intervener, the plaintiff filed a demurrer which was sustained by the court and thereupon the court entered judgment granting plaintiff a permanent injunction enjoining the county treasurer from selling the lot for said special assessment. From that judgment, the defendant and intervener have perfected this appeal.

Section 242, on which the plaintiff relies, and which the intervener and amici curiae say is unconstitutional, is as follows:

"From and after the effective date of this Act, the right of any holder to enforce the lien of any 'Street Improvement Bond' issued under authority of Chapter 10, Article 12, Oklahoma Revised Laws of 1910, or of any 'Street Improvement Bond' or 'Refunding Street Improvement Bond' issued under any authority contained in Chapter 33, Article 14, Oklahoma Statutes of 1931, and statutes supplementary and amendatory thereto, by foreclosure, mandamus, refunding or otherwise, shall be barred upon the expiration of three years immediately following the maturity date named in the face of such bond, unless the holder of any such bond shall have commenced suit to foreclose his lien by filing an action for that purpose and procuring service of summons therein or shall have evidenced his willingness to accept Street Improvement Refunding Bonds issued under the provisions of this Act, in exchange therefor, prior to the expiration of said three year period of limitation; Provided, however, that in all cases where the period of limitation herein mentioned has expired or will expire prior to November 1, 1939, the holder of such bonds shall have until December 1, 1940, in which to pursue

his remedy or obtain the benefits of this Act. The running of the period of limitation herein fixed shall be an absolute bar to any action or proceeding brought thereafter, whether the same is plead as a defense or not, and the property against which such bonds theretofore represented a lien shall thereafter be, by operation of law, absolved of any lien or liability on account of said bonds.

"It shall be the mandatory duty of the city clerk to notify the holders of all outstanding Street Improvement Bonds that the same are about to be barred by the Statute of Limitations, by mailing to the holder of each such bond at his last known address, as shown by the records of said city clerk, and by publication of notice in some newspaper of general circulation in the city or town in which such Street Improvement District is located, and if there be no newspaper published in said city or town, then the publication shall be made in some newspaper published in said county, and by publication thereof in at least one nationally recognized financial journal, which notices shall be mailed and published at least sixty days prior to the expiration of such Statute of Limitation; said notices shall be substantially in the following form:

" 'NOTICE

" ' To all holders of Street Improvement Bonds of District No. _____(or, if appropriate, insert the Ordinance or Serial No.) of the City of _____ , Oklahoma:

"You are hereby notified that on the day of _____, 19____, the above bonds and rights thereunder will be barred by Statute of Limitation, as provided in Senate Bill 164, Oklahoma Session Laws, 1939 You will govern yourselves accordingly.

" 'City Clerk of the City of_____, Okla.'

"Failure of the city clerk to give the notice provided herein shall not impair any of the provisions of this Act."

1. The county treasurer argues that injunction will not lie to restrain the sale, but that the only remedy of the property owner was to pay the assessment under protest and sue to recover the same as provided by 68 O.S. 1941 §15.50. He argues that the decision in Payne v. Smith, 107 Okla. 165, 231 P. 469, holding that the prior statute, C.O.S. 1921 §9971, which was substantially identical with §15.50, does not apply to special assessments, was overruled by Antrim Lbr. Co. v. Sneed, 175 Okla. 47, 52 P. 2d 1040. We do not agree. That case deals with the corporation license tax, and cites with approval Payne v. Smith, and points out that it stands for the rule that special assessments are not "taxes" within the purview of the prior statute. We think the rule stated in Payne v. Smith is still in effect, and injunction is the proper remedy to prevent the sale of property to satisfy special assessments where the lien therefor has been extinguished.

2. Amici curiae argue that the 1939 act was intended to apply only to foreclosure actions, and was not intended to apply to foreclosure by the tax sale and resale method. The title refers to enforcement of the lien of street improvement bonds "by court action **or otherwise**", and section 1 fixes a limitation on enforcement of the lien "by foreclosure, mandamus, refunding **or otherwise**". (Emphasis ours.) They contend that, under the doctrine of ejusdem generis, the general word "otherwise" is restricted by the particular words preceding it, and does not refer to tax sales and resales. They cite, among other authorities, Board of Com'rs v. Grimes, 75 Okla. 219, 182 P. 897; Worley v. French, 184 Okla. 116, 85 P. 2d 296; State v. Ellenstein, 121 N.J.L. 304, 2 Atl. 2d 454; Post v. Land, 27 Colo. App. 270, 148 P. 377.

In Kansas City Southern Ry. Co. v. Wallace, 38 Okla. 233, 132 P. 908, in the third paragraph of the syllabus, the rule applicable here is stated thus:

"The rule of ejusdem generis is resorted to merely as an aid in construction. If, upon consideration of the whole law upon the subject, and the purposes sought to be effected, it is apparent the Legislature intended the general words

to go beyond the class specifically designated, the rule does not apply. Moreover, where the particular words exhaust the class, then the general words must be given a meaning beyond the class."

When we consider the conditions that brought about the enactment of the law and the evils sought to be remedied, and the fact that the preceding words "action" and "foreclosure, mandamus, refunding" exhausted the remedies the bondholder could resort to, we are of the opinion that by the use of the word "otherwise" the Legislature intended to include the method of enforcement by tax sale and resale.

Furthermore, the 1939 act is expressly made applicable to liens created under the 1910 Revised Laws, and the only method of foreclosure under that law was by tax sale and resale. See section 643.

3. Amici curiae argue that, as to properties subject to special assessment liens, which had not been sold at an annual sale to satisfy such liens, the 18 months intervening between the effective date of the act and December 1, 1940, was not sufficient to complete the foreclosure under the tax sale and resale law, and that the bondholders were left no remedy where the remedy by action was barred, as held in City of Bristow v. Groom, 194 Okla. 384, 151 P. 2d 936. They argue that this renders the law unconstitutional. But, we are of the opinion that a mandamus proceeding instituted by the bondholder prior to December 1, 1940, would have been effective to permit the treasurer to complete the sale at the annual sale and resale, even though the resale could not have been held until May, 1942.

The applicable rule is that "a statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubt as to its constitutionality." Brown v. State Election Board, 197 Okla. 169, 170 P. 2d 200; West Okla. Digest, Constitutional Law. §48.

4. Both the county treasurer, the intervener and amici curiae argue that section 23 of the 1923 paving statute (11 O.S. 1941 §103), providing that the special assessment lien shall be "co-equal with the lien of other taxes" and shall "continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid", became a part of the bonds, and that the effect of that portion of section 1 of the 1939 statute, 11 O.S. 1941 §242, above quoted, providing that the property against which the lien exists shall be by operation of law, absolved of the lien or liability, if the bondholder fails to file suit to foreclose the lien or fails to signify his willingness to accept refunding bonds before the expiration of the limitation period prescribed by the section was to impair the obligation of the contract. In support of this contention, the case of Hann v. City of Clinton, 131 Fed. 2d 978, is cited. The parties also cite many cases holding that the law under which the bonds were issued entered into and became a part of the obligation of the bonds.

The plaintiff contends that section 1 of the 1939 act is but a statute of limitations, and that it afforded bondholders sufficient time to pursue their remedies before the bar was complete, and that the lien is a part of the remedy afforded by the 1923 statute for the enforcement of the rights of the bondholder, and that the remedy can be changed or taken away after the expiration of a reasonable time. The 1939 act became effective on May 12, 1939, and it did not purport to bar bonds then delinquent for more than three years, such as those involved in this case, until December 1, 1940, and the plaintiff contends that the period of more than 18 months given such bondholders to commence actions or proceedings to enforce their rights is reasonable. We do not understand that it is contended by the defendant, the intervener or amici curiae that the time allowed is unreasonably short.

Those urging that the 1939 Act is unconstitutional cite cases adhering to the

well settled rule that the laws in force when and under which municipal bonds are issued enter into and become a part of the obligation of the bonds, but they overlook the fact that there is an exception to that rule that is as well settled as the rule itself. The exception is that limitation statutes do not enter into and become a part of the obligation of such bonds or other contracts. Case v. Pinnick, 186 Okla. 217, 97 P. 2d 58; Mires v. Hogan, 79 Okla. 233, 192 P. 811; 12 Am. Jur. 89; 34 Am. Jur. 28; 17 R.C.L. 680; 12 C.J. 1079; Cooley, Constitutional Limitations (8th Ed.) p. 760.

The appellants and amici curiae cite no case holding unconstitutional a statute of limitations applying to existing contract rights under which the parties are given a reasonable time after the statute becomes effective within which to enforce their rights.

They rely upon cases dealing with substantive rights or cases in which the remedy for the enforcement of contract rights is entirely taken away or changed in such a way as to affect substantial rights. Thus, in Nelson v. Pitts, 126 Okla. 191, 259 P. 533, the statute held to impair the obligation of paving bonds could have the effect of extinguishing the lien before all the installments were due. The statute held unconstitutional in Moore v. Otis, 275 Fed. 747, had the effect of the statute in Nelson v. Pitts, and also had the effect of depriving the bondholder of any share in the proceeds of a tax resale thereby depriving the bondholders of the benefit of the co-equality provision. In Davis v. Mc-Casland, 182 Okla. 49, 75 P. 2d 1118, the statute held unconstitutional authorized payment of assessments by delivery of bonds against the district, thereby changing the medium of payment, and lessening the value of the security. The statute held unconstitutional in Straughn v. Berry, 179 Okla. 364, 65 P. 2d 1203, released the accrued penalties on unpaid assessments and to that extent deprived the bondholder of a remedy without substituting another adequate

one, and also deprived him of the co-equality provision.

In United States v. City of Quincy, 18 L. Ed. 403, the statute in force when the bonds were issued granted the city the right to assess and collect taxes necessary to pay the bonds. Later the Legislature limited the amount of taxes the city could collect, and gave the city a first right to the taxes collected for a special purpose, so that it was not certain any would be left for payment of the bonds, and no other remedy was given for collection of the bonds. The statute involved in United States v. City of New Orleans, 26 L.Ed. 395, is similar in effect to that involved in the City of Quincy Case. In Seibert v. United States, 122 U.S. 284, the statute under which the bonds were issued entitled the bondholder to be paid by a tax to be levied and collected in the same manner as county taxes, and the subsequent act held to be unconstitutional provided that county taxes should be levied and collected by the direct action of the county court while all other taxes were to be levied in a more cumbersome manner requiring the action of the prosecuting attorney and the circuit court, which was held not to be the "legal equivalent" of the prior method. In Worthen v. Kavanaugh, 79 L.Ed. 1298, 55 S.Ct. 555, 97 A.L.R. 905, at the time the special assessment bonds were issued, the Arkansas statutes made effective provision for the collection of the assessments. The law held to be invalid repealed that law and did not substitute an adequate remedy, the new law being termed "oppressive" and making the remedy a mere "shadow". State v. City of Lakeland (Fla.) 150 So. 508, 90 A.L.R. 704, is similar to Worthen v. Kavanaugh, in that the only remedy available to the bondholders, mandamus, was so limited that it was not adequate. None of the foregoing authorities involved a statute of limitations.

In Wilson v. Standifer, 184 U.S. 399, it was held that an act of the Texas Legislature substituting an administrative method of forfeiture of the rights

of one who had purchased state lands, and was delinquent in his payments, for a judicial method of forfeiture in existence at the time the sale was made, did not impair the obligation of the contract, and quoted the following from Chief Justice Marshall:

" .. . The distinction between the obligation of a contract and a remedy given by the Legislature to enforce that obligation exists in the nature of things and without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation may direct."

In the recent case of Richmond Mortg. & Loan Corp. v. Wachovia Bank & T. Co., 300 U.S. 124, the true rule is stated as follows:

"The Legislature may modify, limit, or alter the remedy for enforcement of a contract without impairing its obligation, but in so doing, it may not deny all remedy or so circumscribe the existing remedy with conditions and restrictions as seriously to impair the value of the right. The particular remedy existing at the date of the contract may be altogether abrogated if another equally effective for the enforcement of the obligation remains or is substituted for the one taken away."

At the time of the enactment of the 1939 act, there was no statute of limitations applicable to the sale and resale by the county treasurer of property to satisfy street improvement liens, and at that time this court had not decided that the general statute of limitations applied to actions to foreclose such liens. The case of City of Bristow v. Groom, 194 Okla. 384, 151 P. 2d 936, so holding, was not decided until 1944.

The law is well settled that statutes of limitation may be made to apply to rights or causes of action against which there was no such statute in existence at the time they were created, or existing statutes may be shortened, and they may be made applicable to existing causes of action provided a reasonable time is allowed for their enforcement, and such statutes do not violate the constitutional provision against impairment of the obligation of contracts. Mires v. Hogan, 79 Okla. 233, 192 P. 811; Case v. Pinnick, 186 Okla. 217, 97 P. 2d 58; 34 Am. Jur. 26, note 14, 33, 36; 12 Am. Jur. 89, note 6; United States v. Morena, 245 U.S. 392; Terry v. Anderson, 95 U.S. 628. It is clear that the time allowed under the statute in question was not unreasonably short. 34 Am. Jur. 32.

"An existing law of limitations is not considered as being a part of the contract. Hence, the Legislature may enact a statute which limits the time within which actions may be brought to enforce demands where there was previously no period of limitation or which shortens the existing time of limitation, and such a law may operate upon existing contracts without necessarily being invalid as impairing their obligations." 12 Am. Jur. 89.

We are of the opinion that the 1939 act did not have the effect of depriving the bondholders of any of the remedies that were then available to them until the period of limitations fixed by section 1 should expire. Those whose rights were barred by the three-year provision at the time the law became effective or whose rights would be barred by November 1, 1939, were given 18 months after the effective date of the act within which to pursue all such remedies. We think it is clear that, under the authorities just cited, it cannot be said that there was a contractual obligation not to impose a statute of limitations upon such remedies, and it was within the power of the Legislature to do so. The question, then, is whether section 1 of the 1939 act, above quoted, is more than a statute of limitations, and whether the provision extinguishing the lien after the statutory period expired has the effect of unconstitutionally impairing the obligation of the contract existing between the bondholder and the city. We think not.

At the time of the enactment of the act in question, the delinquent special assessments for street improvement pur-

poses had piled up in most of the cities and towns of the state, until the properties in many instances were not worth the amount of delinquent taxes and special assessments standing against them, rendering the properties unmarketable. This condition was brought about by the failure of the city clerks to certify to the county treasurers delinquent special assessments and by the failure of the county treasurers to hold resales and by the failure of the bondholders to commence foreclosure proceedings and proceedings to compel the city clerk to certify delinquent special assessments and by the failure'of the county treasurers to enforce the special assessment liens under the tax sale and resale laws. The act was passed to remedy this condition by compelling bondholders to take steps to enforce their rights within the time limited, and barring actions and proceedings and absolving the properties from the statutory liens if they failed to do so. The provision absolving the properties from the liens was a part of and was intended to make effective the statute of limitations. That provision was consistent with 42 O.S. 1941 §23, which provides:

"A lien is extinguished by the mere lapse of the time within which, under the provisions of civil procedure, an action can be brought upon the principal obligation."

In Wheeler v. Jackson, 137 U.S. 245, the court held valid a statute of New York applying a statute of limitations to tax certificates that had been outstanding for more than eight years at the time of the enactment of the statute, where at the time the certificates were issued they were subject to no statute of limitations, but giving the holders of such certificates six months within which to commence actions or proceedings to enforce their rights, and providing that after the expiration of such six months the tax authorities should cancel in their offices all such sales, if such action or proceeding should not be instituted, and providing further that "thereupon the lien of all such certifi-

cates of sale shall cease and determine." This case has never been departed from, and is in point.

The rule, then, is that the law under which a contract is made enters into and becomes a part of the obligation of the contract and applies to the remedies in the sense that the Legislature cannot take away the remedy without substituting another remedy substantially as effective as the prior remedy, or, in other words, the legal equivalent of the prior remedy. The remedy may be changed so long as no substantial rights under the contract are affected. The imposing of a reasonable statute of limitations where none previously existed or reducing the period, leaving a reasonable period to commence proceedings, is a permissible change in the remedy, and it does not violate the contract clause of the Constitution, though it may incidentally affect the contract by denying the party the advantage of "biding his time" and delaying indefinitely the assertion of his rights while high interest piles up, which was the result in Wheeler v. Jackson, Case v. Pinnick, and other cases above mentioned.

In Curtis v. Whitney, 80 U.S. 68, it was held that a statute requiring the owner of a tax sale certificate to give notice of intention to demand a deed, when there was no such requirement when the certificate was obtained.

In Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 88 A.L.R. 1481, it was said:

"Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order."

The power to enact limitation laws is one of the sovereign powers which is read into contracts.

In 12 Am.Jur. 86, it is said that "a lien created by statute for the payment of a debt is only a part of the remedy

afforded by the law for its collection; a change of that remedy does not affect the obligation of the contract, even though the statute may operate retrospectively"

The court in Hann v. City of Clinton, 131 Fed. 2d 978, cited no authority in support of its holding that the 1939 act is unconstitutional, and apparently gave no consideration to the above-cited authorities, probably because its attention was not called to them.

The act in question is in harmony with several recent acts of the Legislature that had for their purpose the prompt collection of taxes and special assessments and imposing a period of limitations and extinguishing the rights after the bar of the statute had become complete. This and the other acts were brought about by the depression that set in in 1929 and continued for some eleven years. Thus in 1935 the Legislature enacted 62 O.S. 1941 §482, fixing a period of limitations for municipal warrants and extinguishing the liability thereon if suit was not commenced within time but allowing time for the holder of bonds that had been outstanding the full period when the act was passed to sue on their bonds. This law was sustained against an attack similar to the attack in the present case in Case v. Pinnick, 186 Okla. 217, 97 P. 2d 58. In 1939 the Legislature enacted 68 O.S. 1941 §433e, which imposed a period of limitation on the administrative enforcement of tax sale certificates, where no limitation previously existed, and canceling the certificates after the limitation had run, and again allowing time for the holders of certificates that had been outstanding the full period when the act was passed to secure deeds. Again, in 1939, the Legislature enacted the Resale Statute (68 O.S. 1941 §§432-432p) making it mandatory that the county treasurers annually hold sales and resales for the sale of real property to satisfy delinquent ad valorem taxes and special assessments, imposing penalties, and making it a removal offense for failure to do so. Then, at the same 1939 Session of the Legislature the statute in question (11 O.S. 1941 §242-242 o) was enacted imposing a statute of limitations applying alike to the administrative method and the civil action method of enforcing paving assessments, allowing a reasonable time for the holders of bonds that had been delinquent the period prescribed for the enforcement of the liens, and absolving the property from the liens after the limitation period had fully run.

The fact that the refunding bonds provided for in the 1939 act provided that the bonds shall all be on a par instead of giving the lower numbered bonds the preference as provided in the prior law and the fact that the assessments could be liquidated by surrendering the bonds do not render the law invalid. The bondholder was not required to accept refunding bonds, but, instead, could pursue his other remedies during the period allowed after the act became effective.

The 1923 statute does not say that the lien shall be perpetual. It is only by process of reasoning that such a contention can be made. We have held that the term "co-equal" refers to the rank of the lien. Service Feed Co. v. City of Ardmore, 171 Okla. 155, 42 P. 2d 853. It is from the provision that the lien shall continue until the assessments are paid that the duration of the lien is determined. But, as pointed out in Moore v. State, 43 N.J.L. 203, 39 Am. St.Rep. 558, the reason that limitation laws do not become a part of the obligation of contracts is that parties look to performance and not breach of their contracts. The substantial obligation of the contract was that the bondholder should receive his money with interest when the bonds matured, and not that he could delay indefinitely taking steps afforded him for the enforcement of his rights.

Statutes of limitations are of two classes: (1) those which extinguish only the remedy, and (2) those which extinguish both the remedy and the right.

34 Am.Jur. 22. Our statute, 42 O.S. 1941 §23, is of the second class. The 1939 act is also of the second class. Our attention is called to no decision, and we know of none, denying the right of the state to make a limitation law of the second class applicable to existing contracts. In Wheeler v. Jackson, 137 U.S. 245, such a statute was sustained. We think the constitutional power of the Legislature to enact limitation laws, includes the right to make them either of the first or second class, and the courts cannot question the discretion of the Legislature in that regard. As was said in United States v. City of Quincy, above, "nothing can be more material to the obligation than the means of enforcement. Without the remedy the contract may, indeed, in the sense of the law, be said not to exist. . . . The obligation of the contract is the law which binds the parties to perform their agreement." It follows, then, that the contract is no more impaired by a statute of limitations that extinguishes the right along with the right along with the remedy than one that extinguishes only the remedy. A contract of the nature of the one here involved would be of no value without a remedy to enforce it. The contract clause refers to legal, not moral, obligations. 12 Am.Jur. 12.

Amici curiae say the act under consideration is violative of not only the contract clause, but also of the due process clause and the equal protection clause of the State and Federal Constitutions. However, their argument revolves around the contract clause. We are of the opinion, and hold, that the act violates neither clause of the Constitution.

Affirmed.

DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, and CORN, JJ., concur. GIBSON, J., dissents.

GIBSON, J. (dissenting). I think the importance of the question involved justifies this expression of the reasons why I cannot concur in the majority opinion.

I consider the effect of the opinion is to declare operative as a statute of limitation that which under the law cannot be imposed by the Legislature or recognized by the courts as such; that same is violative of the obligations of contract which is inhibited by the Federal Constitution; that same is in contravention of the powers of the courts arising under grant by the Oklahoma Constitution; and that its overall effect is to place the approval of this court upon what amounts to the repudiation by a sovereign state of a power held in trust.

The sole basis that could exist, and the one relied on as existing, for the opinion, is that the limitation is procedural merely and thus applicable only to enforcement of remedies in contradistinction to substantive rights. What I deem to be the vice of the opinion is that it fails to fully recognize the fact that remedies of themselves may and in the instant case do constitute substantive rights and therefore are inviolate, and it ignores the controlling import of legal principles applicable thereto.

Prior to the issuance of the bonds under authority of the 1923 Act, and in order to give character thereto and to induce the public to invest, the law provided a careful, full and sure method for the payment thereof, wherein no duties or conditions were imposed upon the bondholder. And any contemplation that such could be imposed is precluded by the fact that each step in the process of collection is made the mandatory duty of the municipality and of those to whom the power of collection is delegated. And same was further advertised by making the bonds negotiable. The mandate of the law in the final analysis is that the city must collect the assessments and place same in a designated fund for disbursement, to which fund the bondholder is assured a right of recourse for the discharge of the bond. These specific provisions of law are not remedies afforded to existing rights, and thus subject to modification or recall. They are in no sense mere

matters of legislative grace. They were offered contractually and the sole condition of the acceptance to make them obligations was the payment of the purchase price of the bonds, which is not questioned. Hence the obligations became absolute, and beyond the power of the Legislature to recall without a remedy that was an equivalent.

In view of the holdings of this court, that neither the municipality nor the lot owner is personally liable on the obligation of the bonds, the vital character of the lien and the prescribed methods for the discharge of the obligation are of vital concern to the bondholder. And appraising such a situation, this court, in Nelson v. Pitts, 126 Okla. 191, 259 P. 533, 535, declared:

"The bonds in question were accepted by purchaser in view of the provisions of the act under which they were issued. The law under which bonds of this character are issued, and under which contracts of. this character are made, enters into and becomes an essential part of the contract. Oklahoma Cotton Growers' Ass'n v. Salyer, 114 Okla. 77, 243 P. 232; 6 R.C.L. p. 855; 13 C. J. 247; Deweese v. Smith, 66 L.R. A. 971; Armour Packing Co. v. U. S., 14 L.R.A. (N.S.) 400; Moore Co. Treas., v. Otis et al., 275 Fed. 747; Moore v. Gas Securities Co. (C.C.A.) 278 Fed. 111."

Pertinent to the trust phase of the situation there was declared in Spitzer v. City of El Reno, 41 Okla. 430, 138 P. 797, 802, the following:

"That such money, when collected from the various property owners, becomes a trust fund, to be used only for the particular purpose for which it was raised, and especially until all bonds and interest and other legal charges against said fund have been paid, there can be no doubt. See City of El Reno v. Cleveland Trinidad Paving Co., 25 Okla. 648, 107 P. 163, 27 L.R.A. (N.S.) 650; Ritterbusch, Co. Treas., v. Havinghorst, City Treas., 29 Okla. 478, 118 P. 138; Shultz v. Ritterbusch, 38 Okla. 478, 132 P. 961."

In Straughn v. Berry, 179 Okla. 364, 65 P. 2d 1203, 1205, considering the same law under which the paving bonds in the instant case were issued (11 O. S. 1941 §81-117), we declared:

"The law existing at the time of the issuance of municipal bonds, and under the authority of which they are issued, enters into and becomes a part of the contract in such a way that the obligation of the contract cannot thereafter be in any way impaired, or its fulfillment hampered or obstructed by a change in the law."

And in recognition of the property right of the bondholder in the collection of the assessments and creation and disbursements of the trust fund, there is further declared:

"The right of the bondholder to require that interest and penalties be collected and applied to payment of the bonds and interest coupons is a vested property right. Such right may not. be divested by subsequent legislation."

In recognition of the soundness and controlling effect of these principles, the Circuit Court of Appeals, Tenth Circuit, in Hann et al. v. City of Clinton ex. rel. Schuetter, 131 Fed. 2d 978, considering the 1939 law (11 O. S. 1941 §242), which is upheld in the opinion, declared:

"Where paving bonds, issued under 1923 statute which provided that lien should continue until assessment and interest thereon should be paid in full, were outstanding when statute was enacted limiting right to enforce assessment lien to three years following maturity of bonds, such later statute did not affect the bonds since to absolve property of lien short of payment or sale of property for delinquent installments or other delinquent taxes would 'impair the obligation of contract', the provision of the 1923 statute having become a part of the contract. 11 O.S. 1941 §§107, 103, 242."

What I consider to be an authoritative expression is the following, declared in the United States ex rel. Von Hoffman v. City of Quincy, 4 Wall 535, 19 L. Ed. 403:

"It cannot be doubted, either upon principle or authority, that each of such

laws passed by a state would impair the obligation of the contract, and the last mentioned not less than the first. Nothing can be more material to the obligation than the means of enforcement. Without the remedy the contract may, indeed, in the sense of the law, be said not to exist, and its obligation to fall within the class of those moral and social duties which depend for their fulfillment wholly upon the will of the individual. The ideas of validity and remedy are inseparable, and both are parts of the obligation, which is guaranteed by the Constitution against invasion. The obligation of the contract 'is the law which binds the parties to perform their agreement.' Sturges v. Crowninshield, 4 Wheat. 122.

"No attempt has been made to fix definitely the line between alterations of the remedy, which are to be deemed legitimate, and those which under the form of modifying the remedy, impair substantial rights. Every case must be determined upon its own circumstances. Whenever the result last mentioned is produced, the act is within the prohibition of the Constitution, and to that extent void. . . .

"It is equally clear that where a state has authorized a municipal corporation to contract and to exercise the power of local taxation to the extent necessary to meet its engagements, the power thus given cannot be withdrawn until the contract is satisfied. The state and the corporation, in such cases, are equally bound. The power given becomes a trust which the donor cannot annul, and which the donee is bound to execute; ;and neither the state nor the corporation can any more impair the obligation of the contract in this way than in any other."

In the light of what has been said, I deem it manifest that the right of the bondholder to perpetuity of the lien and the exercise of the tax powers prescribed to meet the obligations of the bonds, considered independently of the provision for foreclosure by the bondholder, would be clearly beyond the power of the Legislature to directly impair without providing what in law would be deemed an equivalent. James M. Seibert, Collector, etc., v. United States ex rel., 122

U. S. 284, 30 L. Ed. 1161; Louisiana v. New Orleans, 102 U. S. 203; United States ex rel. Wolff v. New Orleans, 103 U. S. 358, 26 L. Ed. 395; Cooley, Const. Lim. (8th Ed.) vol. 1, p. 583. The remedy proposed by the 1939 Act is in no sense efficacious. It is in substance an abridgement of existing remedies and that to be accomplished through an impairment of vested rights. (Cases last cited and Worthen ex rel. Board of Com'rs v. Kavanaugh, 55 S. Ct. 555, 79 L. Ed. 1298, 97 A.L.R. 905, and anno. note p. 911; Fidelity State Bank, etc., v. North Fork Highway District, 35 Idaho, 797, 209 P. 449, 31 A.L.R. 781).

The remedy provided by foreclosure was merely cumulative and the failure to pursue the same in no wise impaired the right and duty of the county treasurer to proceed by sale and resale where not forestalled by foreclosure action. Oklahoma City v. Vahlberg, Co. Treas., 185 Okla. 28, 89 P. 2d 962.

If such remedy by foreclosure were purely a procedural action, the application of the general statutes of limitation thereto, as was done in City of Bristow v. Groom, 194 Okla. 384, 151 P. 2d 936, would be justified. On the other hand, if such remedy is a substantive right the sole justification for its impairment would be the fact there remained the equally effective remedy through tax sale proceedings. Richmond Mortgage & Loan Corp. v. Wachovia Bank & Trust Co., 300 U. S. 124. In the Groom Case it is expressly recognized that the statute of limitation there applied would not be applicable to proceedings by the county treasurer. Such is a recognition of the fact such duties are without the field of the operation of statutes of limitation. I am of the opinion that such duties are not only without the field of the operation of statutes of limitation but, because of the duties are in the exercise of a power in trust, and a limitation upon the right to compel performance is contrary to established public policy and an infringement upon the power of the court to

enforce contracts, as well as violative of the obligations of such contracts.

Under general law in force at the issuance of the bonds (68 O. S. 1941 §353), taxes upon real property were made a perpetual lien. And this court in construing the lien of special assessments has consistently held the lien thereof is co-equal with the lien of other taxes, "and as to unpaid installments and interest, such assessments and interest continue as a lien until they are fully paid" Settle v. Frakes, 156 Okla. 53, 9 P. 2d 768; Runnells v. Citizens National Bank etc., 157 Okla. 94, 11 P. 2d 173; Blythe v. Pratt, 171 Okla. 2, 41 P. 2d 895; Service Feed Co. v. City of Ardmore, 171 Okla. 155, 42 P. 2d 853.

We have seen that the duties of the treasurer are in the exercise of a power in trust. As to the integrity of such powers there is also to be borne in mind the definition and quality thereof under law existing at the time of the issuance of the bonds.

The nature of the power is defined in 60 O.S. 1941 §183, as follows:

"A power, as the term is used in this article, is an authority to do some act in relation to real property, or to the creation or revocation of an estate therein, or to a charge thereon, which the owner granting or reserving such power might himself perform for any purpose."

That the power here is one in trust is made to appear by section 189 of the same title, which is as follows:

"A power is in trust when any person or class of persons, other than its holder, has, by the terms of its creation an interest, in its execution."

The irrevocability is stated in section 196 of the same title as follows:

"Every power, beneficial or in trust, is irrevocable unless an authority to revoke it is given or reserved in the instrument creating the power."

And that its execution is imperative and imposes a duty which may be compelled by the bondholder is thus declared in section 292 of the same title:

"Every trust power, unless its execution is made expressly to depend on the will of the trustee, is imperative, and imposes a duty on the trustee, the performance of which may be compelled for the benefit of the parties interested."

The duty to convert the liens into cash through tax sales did not devolve upon the bondholder but did devolve upon the governmental agencies. The only delay in the conversion was through nonperformance of such duty. Under the contract such delay could neither impair the lien nor the duty which was mandatory and irrevocable. Under the contract the state could not refuse performance of the duty nor limit the time of its performance short of a sale of the premises upon which the lien obtained. The effect of the 1939 Act would be to accomplish indirectly that which under the Constitution it could not do directly. It places upon the bondholder the duty to foreclose which did not obtain under the contract. At the same time it abrogates the right to exact performance of the governmental duty which theretofore existed. With the duty so shifted it imposes a time limit upon the action which if not timely pursued will result in the extinguishment of the lien. The makeshift is too artificial to be convincing. Under the doctrine of both the Von Hoffman-Quincy and Straughn-Berry Cases, supra, the power and the duty of the governmental agencies were in trust and cannot be thrown aside upon a ground which is in fact but a breach of trust.

Considering the contract as embodying the existing laws, and especially the statutory provisions with reference to powers in trust, the power and duty to sell at tax sale was irrevocable and hence remained until performed. The duty to perform was unconditional and mandatory and therefore the bondholder had a vested right under the existing law to resort to mandamus to compel performance. To abrogate such duty, in which the bondholder has a

vested right, prior to its performance, is beyond the legislative power under the constitutional limitations. And since such duty is unimpaired any limitation upon the right to exact performance through the medium of mandamus as the right obtained under the existing laws is not only violative of a vested contract right and inoperative by reason thereof, but is further inoperative because it is an unauthorized infringement upon the judicial power of the district courts. The jurisdiction of the court to issue mandamus is derived through the Constitution and not through any Act of the Legislature (Const., art. VII, sec. 10). It is a well settled rule that judicial power cannot be taken away by legislative action and that any legislation that hampers judicial action or interferes with the discharge of judicial functions is unconstitutional (11 Am. Jur. 908, and cases cited). And it follows that it cannot interfere with the power vested in the court to issue its prerogative writ of mandamus to enforce the performance of an official duty. This question was thoroughly considered in the case of State ex rel. Buckwalter v. City of Lakeland (Fla.) 150 So. 508, 90 A.L.R. 704, involving the same principle as here. We quote the third, fourth and fifth paragraph of the syllabus:

"3. A constitutional grant of power to the courts of the state to issue writs of mandamus vests in them full and complete authority to issue such writs to enforce the performance of the full and complete duty devolved by law upon any official.

"4. A statute providing that in any mandamus suit by the holder of past-due municipal bonds or interest coupons, to compel payment thereof from money actually on hand in the interest and sinking fund, the peremptory writ, if issued, shall command the respondents to pay to relator only such pro rata portion of the fund as the relator's amount of past-due bonds or interest coupons bears to the whole amount of past-due bonds or interest coupons then unpaid and outstanding, is invalid as an attempt by the Legislature to interfere with power vested in the courts by the state Constitution to issue writs of mandamus to enforce the performance of an official duty.

"5. Power conferred upon the courts by the Constitution cannot be enlarged or abridged by the Legislature."

It is further held therein that the act in the respect indicated was an unconstitutional impairment of the obligation of the bondholder's contract.

In Oklahoma the duty to sell at the tax sale is a duty that is intermediate and preliminary in order to provide the fund to which the bondholder can look for relief and until such fund is created statutes of limitation as such can have no application because they would be contrary to public policy in placing a premium on dishonesty and fraud. Furthermore, the right to mandamus such sale is not in this jurisdiction subject to a statutory limitation. These propositions were established in this jurisdiction during territorial days, by the Supreme Court of the Territory of Oklahoma, in C. W. Barnes, Mayor, et al. v. C. W. Turner and James Kirkwood, 14 Okla. 284, 78 P. 108, and on appeal same was made unquestionable by the Supreme Court of the United States in Duke, Mayor, et al. v. Turner et al., 204 U. S. 623, 9 Anno. Cas. 842. The doctrines so announced are settled law in this jurisdiction. City of Sulphur v. State ex rel. Lankford, Bank Com'r, 62 Okla. 312, 162 P. 744; Board of Education of City of Duncan v. Johnston, 189 Okla. 172, 115 P. 2d 132; Wilson v. City of Hollis, 193 Okla. 241, 142 P. 2d 633.

The doctrine of said cases is not even considered in the opinion. And as authority for the application of the limitation on mandamus there is cited Wheeler v. Jackson, 137 U. S. 245, and Terry v. Anderson, 95 U. S. 628.

The Terry Case involved a reduction in time of an existing limitation and hence the power to impose was not involved but accepted. It can have no

application here where the power to impose is the question.

The Wheeler Case is no more in point.

Under the law of New York a mandamus proceeding is an "action" or "civil action" within the meaning of statutes limiting civil actions. People v. Marsh, 82 N. Y. App. Div. 571, 81 N. Y. Supp. 579, affirmed in 178 N. Y. 618, 70 N. E. 1107 (cited in annotation 9 Anno. Cas. 845) In no event could the Wheeler Case be in point without first assuming that in Oklahoma a mandamus action is to be classed with ordinary civil actions and thus amenable to statutes of limitations. However, independently thereof, the Wheeler Case affords no parallel in its facts by reason of which the discussion therein could be helpful. Here, there is not involved mandamus to compel the disbursement of a fund which had been created, but to compel the doing of something that is preliminary and necessary to the creation of such fund. There, no duties preliminary to awarding the ultimate relief obtained. The relief to which he was entitled was the ultimate relief, a lease which he was entitled to receive on demand. There was involved no unperformed duty in which he had a vested right. His right was to demand and receive the lease, in substance the same as an action for specific performance. The holding was that he had no vested right to withhold demand. If in the instant case the assessments had been collected and placed in the fund as required and the bondholder, deeming it to his advantage to not demand payment, stood back and failed to do so, we would have a parallel situation.

The situation in the instant case was not and could not have been involved in the Wheeler Case and hence nothing there said can afford a criterion herein.

In the majority opinion reference is made to conditions which had arisen by failure of county treasurers to perform their duties and that the act was passed to remedy such condition. This indicates an attempt to justify the act on authority of police power. The exercise of police power rests in the discretion of the Legislature and must square with public necessity. It is not to be accorded to an act by the courts independently of the legislative intent. And such intent must be found in the phrasing of the law. Cooley, Const. Lim., 8th Ed. vol. 1, p. 1228; Home Building & Loan Ass'n v. Blaisdell et al., 290 U. S. 398, 78 L. Ed. 413; Leonard v. State, 100 Ohio St. 456, 127 N. E. 464; Spann v. Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387.

The 1939 Act not only fails to declare it is in exercise of police power, but there is nothing in the act to indicate as much. The act does not purport to wipe the slate clean in the public interest. It recognizes the indebtedness, the lien and the right of enforcement. If shortening the period of enforcement was the purpose, why should it not have been accomplished by compelling the county treasurers to act in accordance with duty already prescribed by the state? The reason is obvious. By shifting the duty to enforce collection to shoulders where for obvious reasons it could not be successfully borne, and at the same time thereby exonerating the county treasurer from duty unless so coerced, there is sought to be accomplished indirectly what could not be, and it is not sought to be, done directly. No public interest is even pretended.

The conditions referred to in the opinion are attributable to no fault of the bondholder and they arose through failure of the property owner to discharge the lien by payment of the assessments, which was the only basis upon which he was entitled to enjoy the property free from the lien, and also through the failure of the county treasurer to effect the collection of the assessments which he was in duty bound under the law to do for the use and benefit of the bondholder. Upon what theory can it be said that under such circumstances the state may repudiate its power in trust and thus reward a defaulting debtor at the ex-

pense of the creditors who loaned in reliance upon the pledged power?

I consider the holding and comment of the court in Rees v. Watertown, 19 Wall. 107, 22 L. Ed. 72, clearly in point here. It is there declared:

"The remedies for the collection of a debt are essential parts of the contract of indebtedness, and those in existence at the time it is incurred must be substantially preserved to the creditor. Thus a statute prohibiting the exercise of its taxing power by the city to raise money for the payment ·of these bonds would be void."

And referring to conditions that reflected the result of nonfulfillment of the obligation, further said:

"These theories are vicious. They are based upon the idea that a refusal to pay an honest debt is justifiable because it would distress the debtor to pay it. A voluntary refusal to pay an honest debt is a high offense in a commercial community and is a just cause of war between nation."

In my opinion the law applicable to, and the proper disposition of the issues herein, should be stated as· follows:

I. The law existing at the time of the issuance of municipal bonds, and under the authority of which they are issued, enters into and becomes a part of the contract in such a way that the obligation of the contract cannot thereafter be in any way impaired, or its fulfillment hampered or obstructed by a change in the law.

II. The remedy given by statute to holders of paving bonds issued pursuant to the 1925 Act to foreclose the lien of assessments in the district court is cumulative and in addition to the remedy by tax sale and resale by the county treasurer, and is without prejudice to bondholders' right to have collections made by such sales (11 O. S. 1941 §107).

III. The holders of street improvement bonds, issued under the 1923 Act, have a vested property right in the lien of assessments levied and in the obligations imposed by the act upon governmental agents to collect such levies by tax sales. (11 O. S. 1941 §81 et seq.)

IV. The lien of assessments made for street improvements pursuant to the 1923 Act continues intact and unextinguished as to unpaid installments and interest until they are paid in full or merged into a valid sale thereof as for taxes, notwithstanding the provisions of the 1939 Act (11 O. S. 1941 §242).

V. The 1939 Act (11 O.S. 1941 §242) to the extent same would impair an assessment lien levied pursuant to the 1923 Act (11 O.S. 1941 §81 et seq.) and remaining unpaid before same is merged in a valid tax sale of the property and to the extent same would impair the obligations of the municipality acting through governmental agents to make such sales in pursuance of the authority of the 1923 Act, is violative of the State and Federal Constitutions (Okla. St. Const. Ann., art. 2, §§7 and 15; U.S.C.A. Const., art. 1, sec. 10, cl. 1; Amend. 14).

VI. Where pursuant to legislative grant of power a municipality levies assessments to provide a fund for payment of paving bonds, which are sold, the power granted and the exercise thereof become a trust which the municipality through the designated agencies is bound to execute. And during the continuance thereof statutes of limitation will not run against the bondholder, who is a beneficiary, and in favor of the municipality, which is the trustee.

VII. The constitutional grant of power to the courts of this state to issue writs of mandamus vests in them full and complete authority to issue such writs to compel the performance of any act which the law specifically enjoins as a duty, resulting from an office or trust.

VIII. Powers conferred upon the courts by the Constitution cannot be abridged by the Legislature.

IX. The provisions of the 1939 Act (11 O.S. 1941 §242) placing a limita-

tion upon the time within which application for and issuing of writ of mandamus may be had to compel a tax sale for delinquent assessments which is mandatory under the provision of the 1923 Act (11 O. S. 1941 §83 et seq.) is an unconstitutional impairment of the right of holder of bonds issued thereunder and is further invalid as an attempt by the Legislature to interfere with power vested in the courts by the State Constitution to issue such writs.

X. 12, O. S. 1941 §95, 2d subd., providing that an action on liability created by statute is barred after three years from accrual, has no application to sale of land for delinquent assessments by county treasurer at a tax sale.

In my opinion, investors in municipal bonds in Oklahoma will do so without any assurance or security that the statutes which are written into the bonds at the time of their issuance will remain therein but that they may be withdrawn by the Legislature without adequate substitutes being made.

For the foregoing reasons, I respectfully dissent.