MORRIS et al. v. ROSECRANS et al.

No. 32367.   Feb. 10, 1948.

Rehearing Denied March 30, 1948.

*191 P. 2d 189.*

Arnold T. Fleig and Walter L. Gray, both of Oklahoma City, for plaintiffs in error.

Twyford, Smith & Crowe, of Oklahoma City, for defendants in error.

WELCH, J.   This is an action by L. T. Rosecrans and Cecil Shnier against B. F. C. Morris, L. M. Morris, and J. E. Van Curen to quiet title and for possession and rental value of lots 1, 2, 3, 4 and 5 in block 16, Bell Vern addition to Oklahoma City, Oklahoma. Plaintiffs assert ownership of the land by virtue of a county treasurer's resale tax deed. Defendants, former owners, attacked the resale deed on the ground that the property was sold at resale for invalid paving assessments.

Judgment was rendered in favor of plaintiff, and defendants appeal.

For reversal of the judgment defendants assert in their first proposition that plaintiffs' resale tax deed is void for the reason that the property was attempted to be sold in satisfaction of void assessments.

Hereunder it is contended that certain assessments were void in their inception in that the assessments were made on lots more than one-half block from the improvements, and therefore beyond the authority or jurisdiction conferred by statute for making charges for street improvement. In support of their contention defendants call attention to a map or plat of the premises which was introduced in evidence. The case of Southern Surety Co. v. Jay et al., 74 Okla. 213, 178 P. 95, is cited, where in the second paragraph of the syllabus, it was said:

"The city council of Muskogee, Okla., made an assessment against all of block 419 to pay for pavement fronting and abutting on the west side of said block. Held, that said city council was without jurisdiction to assess the east half of said block for improvement fronting and abutting on the west half only."

Section 4594, C. O. S. 1921, and 11 O. S. 1941 §101, under which the assessments here involved were made, provide:

"The lots, pieces or parcels of land fronting or abutting upon any improvement shall be chargeable with the cost thereof to the center of the block where the abutting way is on the exterior of the block, and each quarter-block shall be charged with its due proportion of the cost of so improving both the front and side streets on which said block abuts, together with the areas formed by street intersections and alley crossings, . . ."

Section 101 further provides:

"For the purpose of determining such area of assessment a block shall be deemed the area bounded on all sides by streets or avenues, irrespective of the platted designation thereof. . . ."

It is also provided by section 101 and by section 4596, C. O. S. 1921:

"If any of the property abutting upon such improvement shall not be platted into blocks, the governing body shall include such property in proper quarter-block districts for the purpose of assessment and appraisement as provided herein, based upon the division of such property into blocks three hundred (300) feet deep, measured from the outer boundary of the abutting street; provided, that if the property on the opposite side of such street is so platted, such unplatted property shall be platted for the purpose of such assessment to conform thereto as nearly as practicable, and that if the property on the opposite side of the street is not platted, then such unplatted property shall be divided into quarter-block districts for the purpose of such assessment based on blocks which shall be uniform as nearly as practicable, with blocks already platted, if any, on the same street. . . ."

It seems clear that the language "chargeable with the cost thereof to the center of the block" contemplated a block bounded on all sides by streets or avenues and a block uniform as nearly as practicable with other blocks on the street.

The lots involved herein lie in a tier of lots which tier bends at a street intersection causing the outside or street side line of the tier to be along two streets. The average depth of the lots from the street side to the interior or back line is approximately 135 feet. If this single tier of lots be considered as an entire block the cost of the improvement of either of the streets would be chargeable against the land abutting the street to the center of such block or to a depth of one-half of 135 feet, and the area encompassed by such measurement would not include certain of the lots charged with assessments for the street improvement as was contended by defendants. But the tier of lots was bounded on the interior side by an unplatted area, and under such circumstances the block could be considered as completed by the application of a street boundary to the back side in conformity with the platted area and other blocks surrounding the

improvement and such completed block would have an average depth of 300 feet. Upon application of the measurement as provided by statute to the block as completed, the lots in question were within the area chargeable with assessments for improvement of the streets.

It is next contended by defendants that the resale was void for the reason that the property was attempted to be sold in satisfaction of assessments extinguished by law.

Hereunder it is urged that the assessments levied under the provisions of the Revised Laws of 1910, art. 12, c. 10, became extinguished under the terms of an act of the Legislature of 1939, 11 O. S. 1941 §§241-242o. No attack of any kind is made on the 1939 act referred to.

Section 242 provides that the right of any holder to enforce the lien of any street improvement bond by foreclosure, mandamus, refunding or otherwise, shall be barred upon the expiration of three years following the maturity date named in the bond unless the holder shall have commenced an action to foreclose or evidenced his willingness to accept street improvement refunding bonds in exchange therefor.

Assuming the validity and applicability of the 1939 act, it is admitted that an agreement to accept refunding bonds was filed within the time provided thereby. It is urged that under the 1939 act the liens were extinguished and the bondholders were entitled only to the new liens under the exchange provision of the 1939 act. It is not shown that the agreement was acted upon by the city or that refunding bonds were issued. An extract from section 242a is cited:

"The filing of said instrument shall constitute 'Evidence of Willingness to Accept Street Improvement Refunding Bonds' such as will stop the running of the period of limitation mentioned in Section 1 hereof but said filing shall also limit the owner of the bond or bonds described in the instrument filed to any remedy other than that made available by this Act, whether the remedy be sought before or after said period of limitation has expired."

The provision would appear to limit the owner of the bonds "to any remedy other than that made available" by the act, but does not purport to extinguish the lien of the bonds nor limit the duty of the county treasurer in reference to enforcement of liens for delinquent assessments.

Defendants state as their next proposition that at the resale, in each instance, an entire lot was offered for sale for assessments levied only against portions of said lots. On that point, we observe that under one ordinance paving assessments were levied only against the north half of the lots in question and under another ordinance paving assessments were levied against the entire lots.

The trial court made a finding that the county treasurer duly advertised said lots for resale for ad valorem taxes covering each of said lots, for sewer assessments covering each of said lots, for paving assessments under one certain ordinance covering each of said lots, and for paving assessments under another certain ordinance covering the north half of each of said lots. The correctness of the finding is not disputed.

Defendants contend that since only the north half of each lot was charged with certain assessments, there was an offer of sale of each lot for taxes not charged against it, and therefore the tax deed was void.

It is undisputed that there were delinquent ad valorem taxes against all of each lot and likewise sewer assessments and paving assessments. The fact that the treasurer also listed delinquent paving assessments against the north half of each lot in his notice of sale does not appear to us to be an offer of sale of the property for taxes not charged against the property, but an offer of the property for taxes charged against the property.

We find no merit in defendant's assertions of invalidity of the tax deed under this proposition.

The proposition next presented is that the sale by the county treasurer was made in the face of a district court injunction and therefore void.

On that point we observe that the resale was made on May 24, 1944. Prior thereto, on May 8, 1944, plaintiff in error Morris commenced an action in the district court of Oklahoma county for injunction against the county treasurer seeking to enjoin the selling of these lots at resale and apparently a temporary restraining order was issued on or about May 8th. Thereafter, on May 15, 1944, after a hearing, the court denied plaintiffs' application for temporary injunction and dissolved the restraining order theretofore issued. Thereafter, on May 24, 1944, the county treasurer made the resale. Thereafter, in June, 1944, upon final trial of the injunction suit judgment was rendered for defendants and the injunction denied. Thereafter the county treasurer issued the resale tax deed. Thus it was apparent that the resale was not made in violation of an injunctive order.

In the above mentioned injunction suit the plaintiffs by pleadings therein referred to three district court actions commenced several years prior, which were referred to as actions to foreclose these liens or some of them, but any value of those former cases as grounds for injunction were denied in the injunction suit above mentioned. In the trial of this action no evidence was introduced in reference to those former actions. There was some offer of evidence which was rejected, but no point is made here of any alleged error of the trial court in rejecting evidence.

Apparently, whatever was the exact character or purpose of those former actions, they were abandoned and certainly not prosecuted to any attempted foreclosure sale of these lots. Plaintiffs in error's brief makes some reference to those former actions, but does not seriously urge their validity and no authority is presented tending to show that anything in those actions could or should in any manner affect the power of the county treasurer to make this resale in 1944, or to show that such former actions need any further consideration in this opinion.

The judgment is affirmed.

HURST, C.J., DAVISON, V.C.J., and BAYLESS, CORN, and ARNOLD, JJ., concur. RILEY, J., concurs in conclusion. GIBSON, J., concurs specially.

---

GIBSON, J. (concurring specially). I concur in the opinion, but I think that it is inconsistent with the majority holding in Baccus, County Treasurer, et al. v. Banks, 199 Okla. 647, 192 P. 2d 683.

The construction of the 1939 Act, which is made the basis for upholding the sale by the county treasurer, is thus declared in the opinion:

"The provision would appear to limit the owner of the bonds 'to any remedy other than that made available' by the act, but does not purport to extinguish the lien of the bonds nor limit the duty of the county treasurer in reference to enforcement of liens for delinquent assessments."

I consider this statement correct and decisive of the question. And I further consider the pronouncement applicable to the issue in the Baccus case, where, if applied, it would necessitate a conclusion contrary to that expressed in the majority opinion.

In the Baccus case there was involved no action by the bondholder to which the provisions of the Act of 1939 could apply. Therein the treasurer, by virtue of his office and of his own motion, was undertaking to sell, in accordance with the law governing his duty, land for the nonpayment of the delinquent assessments. If the lien of the assessment and the duty of the treasurer to sell was unimpaired by the 1939 Act, as declared, I can see no

basis for holding in the Baccus case that the treasurer was properly enjoined on strength of the applicability and controlling effect of the 1939 Act.

The fact that in the instant case the bondholder, in pursuance of the 1939 Act, had indicated his willingness to accept refunding bonds while in the Baccus case such was not done, affords no basis for the distinction. If the duty of the treasurer to sell arose by virtue of the 1939 Act and thereunder was to be exercised only in event the bondholder had sought the proffered refund, such application could be construed as a condition precedent to the treasurer's exercise of the power of sale, and thus justifying the holding in the Baccus case. But, since both the lien and the duty to sell existed independently of the 1939 Act, it cannot be consistently said in one case, as here, that the lien of the assessment and duty of the treasurer to sell is unimpaired by the 1939 Act, and in another, as in the Baccus case, that the lien and duty were both destroyed by the 1939 Act.