**Nona McCARROLL and Vernis McCarroll, Appellants,**

v.

**DOCTORS GENERAL HOSPITAL, a corporation, Appellee.**

No. 55893.

Supreme Court of Oklahoma.

May 10, 1983.

Rehearing Denied June 14, 1983.

---

**29.** *Li v. Yellow Cab Co.,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226, 1244, 78 A.L.R.3d 393, 416 [Cal.1975].

The suit was commenced on December 27, 1977. The petition alleges that on July 28, 1975, plaintiff, Nona McCarroll, underwent surgery for the repair of a hernia at Doctors General Hospital. In the course of the surgery performed by Dr. H., it is alleged that he negligently severed a femoral artery under the mistaken impression that it was the saphenous vein. On the day of the operation, Nona was transferred to the care of another physician who transferred her to Presbyterian Hospital to correct and repair her condition, and there she underwent surgeries, including successive amputations of her leg.

The allegations of malpractice directed against Doctors General Hospital are that it, through its agents:

1. Improperly draped Nona, thereby allowing Dr. H. to undertake improper surgical procedure;

2. Secured an admission form and consent to operate from Nona, but wholly and totally failed to warn her of the dangers inherent in the surgical procedure and thereby failed to secure proper informed consent to the surgical procedure; and

3. Engaged in improper follow up care, failed to secure adequate care and treatment for Nona by not watching her properly in the recovery area, failed to learn of her condition and her injury from the surgery within a reasonable time, and failed to notify a physician that Nona was having additional medical problems, in that she was in great pain and her leg was turning cold, within a reasonable time.

It is only the constitutionality and applicability of 76 O.S.1981, § 18 to the case at bar which is here presented on appeal.

James B. Browne, Oklahoma City, for appellants.

Stephen Peterson, Bana B. Blasdel, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellee.

LAVENDER, Justice:

This is an appeal from an order of the trial court which granted summary judgment in favor of Appellee, Doctors General Hospital, by reason of the bar of 76 O.S. 1981, § 18.

Plaintiffs below brought suit in the district court against Dr. H., Lincoln Medical Center, Inc., neither of whom are parties to this appeal, and Doctors General Hospital for medical malpractice.

I.

This appeal involves only the hospital for its alleged negligent acts it is said to have committed separate and apart from the negligent act of Dr. H. in severing plaintiff's femoral artery. Under the circumstances in this case, the act of Dr. H. in allegedly concealing from the plaintiff his,

Dr. H.'s, negligence would not be imputable to the hospital absent proof of agency (of which there was none). See 51 Am.Jur.2d Limitations of Actions, § 150. However, as we view 76 O.S.1981, § 18, the question here is not whether the hospital concealed from the plaintiff its acts of alleged negligence so as to extend the limitations period, but whether, under the record, there remains a question of fact as to when the plaintiff "knew or should have known, through the exercise of reasonable diligence, of the existence of the ... injury or condition complained of," within the terms of § 18. Thus, the concealment by Dr. H. of his alleged negligence in severing plaintiff's femoral artery would be admissible only to explain why plaintiff did not learn of her injury or should not have learned of it until much later. Was the plaintiff excused by such concealment from making reasonable efforts to ascertain whether she had been injured by the failure of the hospital to render to her adequate follow-up care? We deem this question to be for the jury.[1] Our discussion follows.

The rule on review of a trial court's ruling on a motion for summary judgment is as expressed in *Weaver v. Pryor Jeffersonian,* Okl., 569 P.2d 967 (1977): "[A]ll inferences and conclusions to be drawn from underlying facts contained in such materials as affidavits, admissions, depositions, pleadings, exhibits and the like, must be viewed in light most favorable to party opposing the motion." With that rule in mind, we have reviewed such materials as appear in the record before us and are unable to agree with the trial court that the only reasonable inference to be drawn therefrom is that plaintiff either learned or should have learned of the hospital's negligence more than two years before she filed her action.

The record discloses that Nona entered defendant hospital for hernia surgery to be performed by Dr. H. Upon regaining consciousness, she discovered that she was in Presbyterian Hospital. Upon inquiring why she was there, she was told to ask Dr. H. After she was released from Presbyterian Hospital, and approximately three or four months following the hernia surgery, Nona went to see Dr. H. because she was having difficulties with her left foot and leg. Her foot was dropped, her toes were curled, and her heel was abnormal. Dr. H. told her that her condition was due to old age and hardening of the arteries. Nona did not seek to confirm Dr. H.'s expressed opinion because, as she stated, he was her doctor and she had confidence in him. Around October 1975, Nona consulted with Ed Smith, an attorney, regarding a dispute which she had with her medical insurance company over payment of medical bills, and on October 31, 1975, she signed a medical release to enable him to secure her medical records and secured her permission to engage the services of James B. Browne, another attorney, to assist him. Upon examination of the medical records, Browne advised Smith of the possibility of a medical negligence claim and recommended that the records be submitted to qualified medical personnel to determine whether a medical negligence claim existed. On February 6, 1976, Browne advised Smith that in his opinion a claim for medical negligence existed, and within two years thereafter, this suit was filed.

A part of the hospital medical records pertaining to Nona is an Operation Record dated July 28, 1975, signed by Dr. H. which states in part:

"What was done: Exploration inguinal area.

"An oblique incision was made in the inguinal area, bleeders were treated by

1. In *Flowers v. Stanley,* Okl., 316 P.2d 840 (1957), we held that where the period of limitations starts when the claimant knew, or, in the exercise of reasonable diligence would have discovered the act which gives rise to the claim, the beginning of the running of the statute of limitations is usually to be determined from the facts and circumstances of the partic-

ular case; and, where these are such that reasonable men might reach conflicting opinions thereon, the issue is a question for determination by the trier of facts. Accord, *H.F. Wilcox Oil & Gas Co. v. Juedeman,* 187 Okl. 382, 101 P.2d 1050 (1940); *Harper-Turner Oil Co. v. Bridge,* Okl., 311 P.2d 947 (1957); *Perkins v. U.S.,* (D.C.Okl.1976), 76 F.R.D. 590.

ligating them with 00 plain. The inguinal area was explored. The saphenous vein was dissected out. It looked like it was clotting and we clamped it and removed a portion of it and it turned out to be the femoral artery located close to the surface."

■ The foregoing summation demonstrates that, at the time the court below sustained defendant's motion for summary judgment, there was an unresolved question of fact to be determined by the jury as to whether Nona knew or should have known, through the exercise of reasonable diligence, of the existence of the injury or condition complained of within two years prior to December 27, 1977, the date this action was commenced.

## II.

■ We next consider when, under the provisions of 76 O.S.1981, § 18, the limitations therein set forth begins to run. Reduced to its essence for the purpose of resolving this issue, § 18 provides:

"An action for damages for injury or death ... shall be brought within two (2) years of the date the plaintiff knew, or should have known, through the exercise of reasonable diligence, of the existence of the death, injury or condition complained of; ...."

Section 18 does not purport to create a new cause of action. It operates as a limitation upon *existing* rights of action. There is not, nor can there be, a cause of action for death, injury or condition unless the death, injury or condition is *wrongful*. Thus, the element of *wrongfulness* by necessary implication is an integral and inseparable part of the "action" referred to. Likewise, it is the *wrongful* "death, injury or condition complained of," the existence of which the plaintiff "knew, or should have known, through the exercise of reasonable diligence" which triggers the running of the limitations in § 18. Therefore, the statute begins to run from the date when the plaintiff knew, or should have known, through the exercise of reasonable diligence of the wrongful injury complained of.

## III.

The plaintiffs attack the constitutionality of 76 O.S.1981, § 18 on three grounds: (a) it denies similarly situated persons equal protection of the law in violation of Amendment XIV § 1 of the United States Constitution; (b) it is a special statute of limitations, in violation of the Oklahoma Constitution, Art. V § 46; and (c) it confers special immunities upon members of the medical profession, in violation of the Oklahoma Constitution, Art. V § 51. Plaintiffs further assert that even if the statute withstands the constitutional assault, its application to the case at bar requires that it bear prospectively and runs beginning with the effective date of the statute and that the action is therefore timely brought.

Title 76 O.S.1981, § 18 provides:

"*An action for damages for injury or death against any physician, health care provider or hospital licensed under the laws of this state, whether based in tort, breach of contract or otherwise, arising out of patient care, shall be brought within two (2) years of the date the plaintiff knew or should have known, through the exercise of reasonable diligence, of the existence of the death, injury or condition complained of;* provided any action brought more than three (3) years from the date of the injury shall be limited to actual medical and surgical expenses incurred or to be incurred as a direct result of said injury, provided, however, the minority or incompetency when the cause of action arises will extend said period of limitation." (Emphasis added.)

It is only the emphasized portion of the statute which is here at issue.

We express no view as to the constitutionality of that portion of the above statute which is not emphasized.

Under Art. V § 51 of the Oklahoma Constitution, the Legislature is forbidden from creating special legislation that grants any association, corporation or individual any exclusive rights, privileges, or immunities within this State.

Art. V § 46 of the Oklahoma Constitution provides, insofar as pertinent:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

\* \* \* \* \* \*

[For] limitation of civil or criminal actions; \* \* \*."

The Fourteenth Amendment to the United States Constitution provides, in pertinent part:

"No State shall ... deny to any person within its jurisdiction the equal protection of the laws."

This Court recognized in *Loyal Order of the Moose, Lodge 1785 v. Cavaness*[2] that the Legislature has wide latitude to create statutory classifications, but to withstand constitutional scrutiny, we held that any discrimination must withstand important legislative objectives and above all be reasonable. There the Court struck down a statute which imposed a time limitation upon a right of action against an architect, builder, contractor or "any person performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement," not because of the grouping of like callings into a class for special legislative treatment, but because of the omission from the group of owners and tenants, the omission of whom did not rest upon some reasonable consideration of differences between owners and tenants on the one hand, and those specifically included within the legislatively created class on the other hand, which differences bore a fair and substantial relation to the object of the legislation. The Court further said: "Nor is the classification founded upon a reasonable distinction or difference necessitated by state policy. A statute making such an unsupportable classification fails to meet the requirements of the equal protection guaranty."

The case before us is distinguishable from *Cavaness* in that here it is the legislative grouping of health care providers into a class for special legislative treatment, and not the omission of certain health care providers from the class that is constitutionally challenged. Thus a clear distinction is drawn.[3]

The constitutional powers and limitations of state legislatures to classify like businesses or callings for special legislative treatment is summarized in 16A Am Jur 2d, Constitutional Law § 775 in the following language:

"Since the establishment of regulations of a particular trade or business essential to the public health and safety is within the legislative capacity of the state in the exercise of its police power, the classification of the subjects of such legislation, so long as it has a reasonable basis and is not merely an arbitrary selection without real difference between the subjects included and those omitted from the law, does not deny to any person the equal protection of the laws. Legislation affecting alike all persons pursuing the same business under the same conditions is not class legislation. Classification of employees' occupations by statute may be based not only on the character of the employees, but on the nature of the employment; and a statute dealing with employees in a particular line of business does not effect arbitrary discrimination merely because operation of the statute is not extended to other lines of business having their own circumstances and conditions. But if some persons engaged in a calling or business are subjected to special burdens or favored by special privileges while other persons engaged in the same calling or business are not so treated, the legislation is based upon unconstitutional discrimination.

"It is primarily for the state to select the kinds of business which shall be the subject of regulation. The legislature has wide discretion, and, as in other cases, legislative discretion in the matter of classification of businesses is not subject to judicial review unless such discretion appears to have been exercised arbitrarily and without any show of good reason.

---

**2.** Okl., 563 P.2d 143 (1977).

**3.** See 16A Am Jur 2d Constitutional Law § 757.

And the general rule that the legislature, dealing with practical exigencies and guided by experience, may make classifications without including all cases which it might possibly reach, is free to recognize degrees of harm, and may confine its restrictions to those classes of cases where the need is deemed to be greatest, is applicable to classifications of occupations. There is no prohibition in the Federal Constitution against a state making different regulations for different kinds of businesses or occupations. If a business is subject to regulation by the state, specific regulations for that one kind of business, which may be necessary for the protection of the public, can never constitute a just ground of complaint because similar restrictions are not imposed upon another business of a different kind."[4]

■ We hold that the classification of health care providers for the purpose of legislatively limiting the time within which an action against them may be brought, as set forth in 76 O.S.1981, § 18, has not been shown to be such an arbitrary exercise of legislative discretion or without any show of good cause as would impel this Court to declare it unconstitutional. The statute is not unconstitutional.

■ Title 76 O.S.1981, § 18 was effective April 8, 1976. It is well established in this jurisdiction that a statute of limitations, insofar as it affects rights of action in existence, when the statute is passed, shall be held, in the absence of a contrary provision in the legislation, to begin when the cause of action was first subjected to its operation. *Magnolia Petroleum Co. v. Wat-*

*kins,* 177 Okl. 30, 57 P.2d 622 (1936).[5] Taking the materials submitted in support of the motion for summary judgment in the light most favorable to plaintiff, she did not learn and was unable to discover with reasonable diligence the existence of the injuries for which she sought compensation until February 6, 1976. Assuming that to be the case under 76 O.S.1981, § 18, she had two years from February 6, 1976, within which to bring this action. It was filed, as we have already noted, on December 27, 1977. If the factual disputes regarding when plaintiff knew or should have learned of her injuries are resolved by the jury in the plaintiff's favor, this action was timely brought.

Judgment reversed and cause remanded with directions to proceed further consistent with the views herein expressed.

BARNES, C.J., and IRWIN, HODGES and DOOLIN, JJ., concur.

SIMMS, V.C.J., and OPALA and WILSON, JJ., concur in part and dissent in part.

HARGRAVE, J., did not participate.

---

4. Accord, see *Norton Johnson Buick Co. v. Lindley,* 173 Okl. 93, 46 P.2d 525 (1935).

5. See also, *Graner Const. Co. v. Brandt,* 180 Okl. 221, 68 P.2d 788 (1937); *Ford Motor Co. v. McDonald,* 183 Okl. 130, 90 P.2d 404 (1939); *State v. Eddie,* 195 Okl. 26, 154 P.2d 763 (1945); *Gasteam Radiator Co. v. United States F. & G. Co.,* Okl., 471 P.2d 883 (1970); *Midcontinent Casualty Co. v. P & H Supply, Inc.,* Okl., 490 P.2d 1358 (1971). Although no contention is seriously argued that the new statute of limitation unreasonably shortened the time within which Mrs. McCarroll could bring her action and therefore the previous statute should have been applied, we notice that it is within the power of the Legislature to pass a statute of limitations, or to change the period of limitations previously fixed, and to make such statute or changes applicable to existing (but not yet filed) causes of action, provided a reasonable time is given by the new law for the commencement of suit before the bar takes effect. 51 Am.Jur.2d Limitations of Actions § 57; *City of Claremore v. Oklahoma Tax Commission,* 197 Okl. 223, 169 P.2d 299, 304 (1946); *Baccus v. Banks,* 199 Okl. 647, 192 P.2d 683 (1948), app. dismd.; *Reeder v. Banks,* 333 U.S. 858, 68 S.Ct. 743, 92 L.Ed. 1138.