Dear Representatives, Vaughn
¶ 0 This office has received your request for an Attorney General Opinion. You asked, in effect, the following questions:
1. Does 70 O.S.Supp. 1994, § 5-129.1[70-5-129.1], which exempts thefunds of specific named programs, organizations and associationsfrom local board of education control under 70 O.S.Supp. 1994,§ 5-129[70-5-129], violate the special law prohibition of Article V, § 51of the Oklahoma Constitution?
 2. If 70 O.S.Supp. 1994, § 5-129.1[70-5-129.1] is constitutional, doesa named parent teacher association at each school site have to beincorporated as a nonprofit corporation pursuant to26 U.S.C. § 501(c)(3) in order to be exempt?
 3. How does a school district "sanction" the organization orassociation as contemplated by 70 O.S.Supp. 1994, § 5-129.1[70-5-129.1]?
 I.
¶ 1 Your first question is whether 70 O.S.Supp. 1994, §5-129.1[70-5-129.1], which exempts certain programs, organizations and associations from the requirements of Section 5-129, violates Article V, § 51 of the Oklahoma Constitution.
¶ 2 Title 70 O.S.Supp. 1994, § 5-129[70-5-129] states in pertinent part:
 A. The board of education of each school district shall exercise control over all funds on hand or hereafter received or collected, as herein provided, from student or other extracurricular activities conducted in the school district.
¶ 3 Section 5-129.1 exempts certain organizations from this provision, stating:
 A. Those funds which are collected by organizations chartered by the Oklahoma Congress of Parents and Teachers shall be exempted from the provisions as outlined in Section 5-129 of this title.
 B. Those funds which are collected by Junior Achievement programs or Parent Teacher Associations that are incorporated as a nonprofit corporation pursuant to Section 501(c)(3) of Title 26 of the United States Code and are sanctioned by the school district shall be exempt from the provisions as outlined in Section 5-129 of this title.
70 O.S.Supp. 1994, § 5-129.1[70-5-129.1].
¶ 4 Article V, § 51 of the Oklahoma Constitution provides that:
 The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State.
Okla. Const. art. V, § 51.
¶ 5 Thus, the question is whether granting exemptions from school board control of funds to the Oklahoma Congress of Parents and Teachers, Junior Achievement programs, and parent teacher associations is a special law in violation of Article V, § 51 of the Oklahoma Constitution.
¶ 6 The Oklahoma Supreme Court has consistently held that legislative enactments are presumed valid and will be upheld unless "clearly, palpably, and plainly inconsistent with the Constitution." Kimery v. Public Service Co. of Oklahoma,622 P.2d 1066, 1069 (Okla. 1980) (citations omitted). Whenever possible, statutes should be construed so as to uphold their constitutionality. City of Norman v. Liddell, 596 P.2d 879, 882
(Okla. 1979). Therefore, 70 O.S.Supp. 1994, § 5-129.1[70-5-129.1] must be deemed constitutional unless it clearly violates a constitutional provision.
¶ 7 No case law defines the phrase "exclusive rights, privileges or immunities" in Article V, § 51 of the Oklahoma Constitution. The Oklahoma Supreme Court has stated that "[t]he inhibition against special privileges and immunities contained in Art. V, § 51, was intended to preserve equality between citizens . . . who are similarly situated. . . ." Kimery,622 P.2d at 1071 (citations omitted) (emphasis added). Additionally, Black's Law Dictionary 1361 (rev. 4th ed. 1968) defines the term "special privilege" as a "right, power, franchise, immunity, or privilege granted to, or vested in, a person or class of persons, to the exclusion of others, and in derogation of common right." (Emphasis added.) Thus, a prohibited special privilege is one which advantages one person or class of persons to the exclusion of others similarly situated.
¶ 8 In examining statutes in light of Article V, § 51 of the Oklahoma Constitution, the Oklahoma Supreme Court, after determining that exclusivity exists, has applied "an equalprotection analysis, bearing in mind that the legislature has wide latitude to create statutory classifications. To withstand constitutional scrutiny, however, the classification mustreasonably relate to an important legislative objective." St.Paul Fire Marine Ins. Co. v. Getty Oil Co., 782 P.2d 915, 922
(Okla. 1989) (citations omitted) (emphasis added). Consequently, in examining Section 5-129.1 under Article V, § 51 of the Oklahoma Constitution, an equal protection analysis is appropriate. In Ross v. Peters, 846 P.2d 1107 (Okla. 1993) the Oklahoma Supreme Court analyzed the Equal Protection clause. This case involved the State Board of Examiners of Official Shorthand Reporters ("Board"). Certain applicants for licensure with the Board asserted that the stenomask method of shorthand was permissible to demonstrate proficiency and court reporting skills. They argued that to refuse to recognize such form of reporting violated the Equal Protection Clause of the Fourteenth Amendment. The Court held that the certification statutes which excluded stenomask form of reporting were not unconstitutional since there was a rational connection with applicants' fitness to practice and the rule excluding stenomask reporting. The Oklahoma Supreme Court stated:
 The Equal Protection Clause, although not an absolute guarantee of equality of operation or application of state legislation, is intended to safeguard the quality of governmental treatment against arbitrary discrimination. Legislative action which sets apart any class without a rational basis for doing so offends this clause. . . . "[U]nless a classification warrants some form of heightened review because it jeopardizes the exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest."
Ross v. Peters, 846 P.2d at 1114-1115 (citations omitted).
¶ 9 Because neither a fundamental right nor a suspect classification is implicated in this situation, the rational basis test is applied. In Loyal Order of Moose, Lodge 1785 v.Cavaness, 563 P.2d 143, 144 (Okla. 1977), the Oklahoma Supreme Court struck down a statute which imposed a time limitation upon a right of "action against an architect, builder, contractor or `any person performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement.'" The Court in a subsequent case explained why the statute in question in Loyal Order of Moose, Lodge 1785
was found unconstitutional:
 There the Court struck down a statute . . . not because of the grouping of like callings into a class for special legislative treatment, but because of the omission from the group of owners and tenants, the omission of whom did not rest upon some reasonable consideration of differences between owners and tenants on the one hand, and those specifically included within the legislatively created class on the other hand, which differences bore a fair and substantial relation to the object of the legislation. The Court further said: "Nor is the classification founded upon a reasonable distinction or difference necessitated by state policy. A statute making such an unsupportable classification fails to meet the requirements of the equal protection guaranty."
McCarroll v. Doctors General Hosp., 664 P.2d 382, 386 (Okla. 1983), quoting from Loyal Order of Moose, Lodge 1785 (citation omitted) (emphasis added).
¶ 10 The meaning of 70 O.S.Supp. 1994, § 5-129.1[70-5-129.1](A) and (B) must be examined to determine if, in fact, the statute is unconstitutional. Section 5-129.1(A) exempts all "organizations chartered by the Oklahoma Congress of Parents and Teachers" from the provisions of Section 5-129. The Oklahoma Congress of Parents and Teachers (commonly referred to as Oklahoma "PTA") is one specific organization which excludes all others. While Section 5-129 grants sole control of all school funds collected from student or other extracurricular activities conducted in the school district to the board of education, the Section 5-129.1(A) exemption allows the Oklahoma PTA to bypass all the required procedures applied to funds raised by other school-related groups.[1]
¶ 11 The McCarroll Court, in upholding a classification of health care providers for the purpose of legislatively limiting the time within which an action against them may be brought, did acknowledge however, that:
 [I]f some persons engaged in a calling or business are subjected to special burdens or favored by special privileges while other persons engaged in the same calling or business are not so treated, the legislation is based upon unconstitutional discrimination.
McCarroll at 386, quoting with approval from 16A Am.Jur.2dConstitutional Law § 775.
¶ 12 The Oklahoma PTA, engaged in the "calling" of supporting local school districts, is favored by the special privilege of immunity from Section 5-129, while other parent teacher groups engaged in the "calling" of supporting a local school district are not so treated. Similar to the statute in question before the Court in Loyal Order of Moose, Lodge 1785, Section 5-129.1(A) omits all parent teacher groups other than the Oklahoma PTA, the omission of which does not appear to rest upon any reasonable consideration of difference between them.[2] All other parents and teachers who support public education through various groups would not be treated equally because other groups are not included in the Section 5-129.1(A) exemption. This exemption renders Section 5-129.1(A) unconstitutional.[3]
¶ 13 Title 70 O.S.Supp. 1994, § 5-129.1[70-5-129.1](B), which exempts both Junior Achievement programs and parent teacher associations, must be analyzed under the same constitutional scrutiny as Section 5-129.1(A). It is important to look at each of these entities individually.
¶ 14 Junior Achievement is a nonprofit organization, the purpose of which is to educate students about business, economics and the work force.[4] Section 5-129.1(B) exempts Junior Achievement programs from the requirements of Section 5-129, while other business groups who wish to raise funds for school district activities must abide by the requirements of Section 5-129. Consequently, citizens who are members of other similarly situated business groups are not treated equally. By naming only one business group, the statute has omitted all other similar groups without some reasonable consideration of difference between the Junior Achievement programs and other business groups. Under the rationale of Loyal Order of Moose, Lodge 1785
this unequal treatment of similarly situated citizens is a violation of Article V, § 51 of the Oklahoma Constitution.[5] While under the above analysis Oklahoma Congress of Parents and Teachers and Junior Achievement programs are not allowed an exemption, they may still be exempt from the Section 5-129 regulations by way of the 1994 amendment to the statute that grants an exemption with the wholly inclusive phrase "Parent Teacher Associations."
¶ 15 In 1994 the Legislature amended Section 5-129.1(B) to create a third category of associations exempt from Section 5-129. The amendatory language states:
 Parent Teacher Associations that are incorporated as a nonprofit corporation pursuant to Section 501(c)(3) of Title 26 of the United States Code and are sanctioned by the school district shall be exempt from the provisions as outlined in Section 5-129 of this title.
70 O.S.Supp. 1994, § 5-129.1[70-5-129.1](B).
¶ 16 The phrase "Parent Teacher Associations" is not defined in the statute. However, the phrase is somewhat confusing because the Oklahoma Congress of Parents and Teachers uses the term PTA,[6] which is an abbreviation for parent teacher association. To determine its meaning in Section 5-129.1(B) we look to a general rule of statutory construction that the statute must be construed as a consistent whole, giving effect to every portion. Cowart v. Piper Aircraft Corp., 665 P.2d 315, 317
(Okla. 1983). Section 5-129.1(A) specifically lists Oklahoma Congress of Parents and Teachers (Oklahoma PTA) as the group exempted from Section 5-129 requirements. Section 5-129.1(B) refers to Parent Teacher Associations as exempt. If subsection B is interpreted to mean only the official chapters of the Oklahoma PTA, which are exempted by Section 5-129.1(A), the amendment to subsection B does nothing to expand the groups exempt from Section 5-129. Since the Legislature is never presumed to have done a vain thing, Farris v. Cannon, 649 P.2d 529 (Okla. 1982), the amendatory language in subsection B must have a meaning different from the language already in the statute. Consequently, the phrase "Parent Teacher Associations" found in Section 5-129.1(B) does not refer to the official Oklahoma PTA chartered by the Oklahoma Congress of Parents and Teachers.
¶ 17 Since the phrase "Parent Teacher Associations" is not defined in the statutes, it should be defined using the ordinary and common definition of the words used unless context dictates special or technical definition is to be utilized. 25 O.S. 1991,§ 1[25-1]. "Association" is defined in Webster's Third New International Dictionary 132 (1981) as "an organization of persons having a common interest."
¶ 18 The Section 5-129.1(B) phrase Parent Teacher Associations (hereinafter referred to as "parent teacher groups") is a legislative grouping of all parent teacher associations, groups and organizations. The phrase Parent Teacher Associations is a grouping made available to all parent teacher groups that want to join together to support a school district. Because the phrase is broad enough to include all similarly situated citizens (in this case all parents and teachers who want to associate for school support) the provision is constitutional. Any parent teacher group which meets the other requirements in Section 5-129.1(B) may be sanctioned by the local board of education. Both the Oklahoma Congress of Parents and Teachers and the Junior Achievement programs could qualify for exempt status under the Section 5-129.1(B) exemption for parent teacher associations. However, the eligibility of any organization for exemption is a question of fact which cannot be addressed in this opinion. 74O.S.Supp. 1994, § 18b[74-18b](A)(5).
 II.
¶ 19 In question two you ask whether 70 O.S.Supp. 1994, §5-129.1[70-5-129.1](B) requires parent teacher groups to be incorporated as nonprofit corporations pursuant to 26 U.S.C. 501(c)(3) at each school site. If the association is incorporated and meets the requirements of 501(c)(3), it also meets one of the criteria to be exempt from 70 O.S.Supp. 1994, § 5-129[70-5-129]. The group might be incorporated as a single school site association or it might be incorporated as a district-wide association with different chapters or sections at each school.
 III.
¶ 20 In the third question you ask how a school district "sanctions" an association pursuant to Section 5-129.1. Each school district is governed by an elected board of education. 70O.S.Supp. 1994, § 5-106[70-5-106] and § 5-117. Consequently, the local board of education would be the body to "sanction" a particular group on behalf of a school district. Since the term "sanction" is not defined in the statute, it should be construed by using the ordinary and common definition of the word. 25 O.S. 1991, §1[25-1]. Webster's Third New International Dictionary 2008-2009 (1981) defines "sanction" as:
 [E]xplicit permission or recognition by one in authority that gives validity to the act of another person or body; . . . something that authorizes, confirms or countenances[.]
¶ 21 Sanctioning of associations would include some type of official recognition or permission. However, the question of the criteria to be used by a local board of education in determining which associations to sanction is not answered by the statute. Therefore, the appropriate procedure for sanctioning local associations is committed to local discretion, subject of course to statutory and constitutional limitations.
¶ 22 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The specific exemptions from the board of education controlof the funds of Oklahoma Congress of Parents and Teachers(Oklahoma PTA) and Junior Achievement programs found at 70O.S.Supp. 1994, § 5-129.1[70-5-129.1] violate the special law prohibitionof Article V, § 51 of the Oklahoma Constitution. Nevertheless,those organizations may fit under the Section 5-129.1(B) generalexemption for parent teacher associations.
 The exemption in 70 O.S.Supp. 1994, § 5-129.1(B) forparent teacher associations does not violate Article V, § 51 ofthe Oklahoma Constitution, because it does not treat citizens whoare similarly situated differently.
 2. Title 70 O.S.Supp. 1994, § 5-129.1(B) only requiresthat the parent teacher associations be incorporated pursuant to26 U.S.C. § 501(c)(3). The incorporated entity may be one whichincludes all schools in the district, or the organization may beincorporated only as to a particular school site.
 3. The local board of education, as the decision-making bodyfor the local school district, "sanctions" an association asrequired by 70 O.S.Supp. 1994, § 5-129.1(B). The particularcriteria for such sanctioning must be determined by the localschool board of education.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
L. MICHELLE STEPHENS ASSISTANT ATTORNEY GENERAL
[1] This opinion addresses only the funds raised from student or other extracurricular activities conducted in the school district.
[2] This office is unable to find any rational basis for treating the Oklahoma Congress of Parents and Teachers differently from all other parent teacher organizations.
[3] It should be noted that the 1994 amendment was not enacted with a "severability" or "separability" clause. However, generally, "[i]f any provision or application of the act is found to be unconstitutional and void, the remaining provisions or application of the act shall remain valid. . . ." 75 O.S. 1991,§ 11a[75-11a](1).
[4] Junior Achievement of Greater Oklahoma City, Inc., Junior Achievement Business and Education (1993-1994 Participation Report).
[5] This office is also unable to find any rational basis for treating Junior Achievement programs differently.
[6] PTA information packet provided by Oklahoma PTA (1995).