2006 OK 98

**Monica Belinda ZEIER,
Plaintiff/Appellant,**

v.

**ZIMMER, INC. and Theron S. Nichols,
M.D., Defendants/Appellees.**

No. 102,472.

Supreme Court of Oklahoma.

Dec. 19, 2006.

Rehearing Denied Feb. 20, 2007.

John B. Nicks, Thomas A. Layon, Layon, Cronin, Kaiser & Nicks P.A., Tulsa, OK, for Plaintiff/Appellant, Monica Belinda Zeier.

Jeffrey A. Glendening, James A. Higgins, John D. Bogatko, The Glendening Law Firm, P.L.L.C., Tulsa, OK, for Defendant/Appellee, Theron S. Nichols, M.D.

Harvey D. Ellis, Crowe & Dunlevy, Oklahoma City, OK, for amicus curiae, Oklahoma State Medical Association.

WATT, C.J.

¶ 1 A single dispositive issue is presented on appeal: whether the affidavit of merit [1] requirement of 63 O.S. Supp.2003 § 1–1708.1E [2] is constitutional. We determine

---

1. The terms "affidavit of merit" or "certificate of merit" are generic terms applied to a variety of special certifications—usually supplied by medical experts—that verify the legitimacy of claims involving professional standards of care. D. Kopstein, "An Unwise 'Reform' Measure," 39 May Trial 26 (2003).

2. Title 63 O.S. Supp.2003 § 1–1708.1E provides:

"A. 1. In any medical liability action, except as provided in subsection B of this section, the plaintiff shall attach to the petition an affidavit attesting that:

that the statute is an unconstitutional special law prohibited by the Oklahoma Constitution art. 5, § 46.[3] Furthermore, we hold that the requirement that a medical malpractice claimant obtain a professional's opinion that the cause is meritorious at a cost of between $500.00 and $5,000.00 [4] creates an unconstitutional monetary barrier to court access guaranteed by art. 2, § 6 of the Oklahoma Constitution.[5]

## FACTS

¶2 On August 9, 2004, the defendant/appellee, Theron S. Nichols (Nichols/physician/doctor), performed knee replacement surgery on the plaintiff/appellant, Monica Belinda Zeier (Zeier/patient), implanting a device manufactured by Zimmer, Inc. (Zimmer/manufacturer). Zeier filed suit against the physician and the manufacturer on May 5, 2005, alleging negligence, manufacturer's products liability and breach of warranty. The petition provided that: 1) the wrong knee replacement parts were utilized during surgery, 2) the device was defective in design; and 3) the instrument was in the exclusive control of Nichols and Zimmer at all relevant times.

¶3 The patient neither attached an affidavit of medical negligence, as required

a. the plaintiff has consulted and reviewed the facts of the claim with a qualified expert,
b. the plaintiff has obtained a written opinion from a qualified expert that clearly identifies the plaintiff and includes the expert's determination that, based upon a review of the available medical records, facts or other relevant material, a reasonable interpretation of the facts supports a finding that the acts or omissions of the health care provider against whom the action is brought constituted professional negligence, and
c. on the basis of the qualified expert's review and consideration, the plaintiff has concluded that the claim is meritorious and based on good cause.
2. If a medical liability action is filed:
a. without an affidavit being attached to the petition, as required in paragraph 1 of the subsection, and
b. no extension of time is subsequently granted by the court, pursuant to subsection B of this section, the court shall, upon motion of the defendant, dismiss the action without prejudice to its refiling.
3. The written opinion from the qualified expert shall state the acts or omissions of the defendant(s) that the expert then believes constituted professional negligence and shall include reasons explaining why the acts or omissions constituted professional negligence. The written opinion from the qualified expert shall not be admissible at trial for any purpose nor shall any inquiry be permitted with regard to the written opinion for any purpose either in discovery or at trial.
B. 1. The court may, upon application of the plaintiff for good cause shown, grant the plaintiff an extension of time, not exceeding ninety (90) days after the date the petition is filed, except for good cause shown, to file in the action an affidavit attesting that the plaintiff has obtained a written opinion from a qualified expert as described in paragraph 1 of subsection A of this section.
2. If on the expiration of an extension period described in paragraph 1 of this subsection, the plaintiff has failed to file in the action an affidavit as described above, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.
C. 1. Upon written request of any defendant in a medical liability action, the plaintiff shall, within ten (10) business days after receipt of such request, provide the defendant with:
a. a copy of the written opinion of a qualified expert mentioned in an affidavit filed pursuant to subsection A or B of this section, and
b. an authorization from the plaintiff in a form that complies with applicable state and federal laws, including the Health Insurance Portability and Accountability Act of 1996, for the release of any and all medical records related to the plaintiff for a period commencing five (5) years prior to the incident that is at issue in the medical liability action.
2. If the plaintiff fails to comply with paragraph 1 of this subsection, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to the refiling."

3. The Okla. Const. art. 5, § 46 provides in pertinent part:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
... Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts ..."

4. See ¶26 and accompanying footnotes, infra.

5. The Okla. Const. art. 2, § 6 provides:

"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

by 63 O.S. Supp.2003 § 1–1708.1E, nor did Zeier request an extension to comply with the statutory requirement. On June 1, 2005, the doctor filed a motion to dismiss for the patient's failure to provide the medical negligence affidavit. Zeier did not respond and Nichols filed a motion to deem the cause confessed which was mailed to the patient on June 29, 2005. On the same date, Zeier responded to the motion to dismiss asserting that the petition stated a cause of action for negligence under the principle of *res ipsa loquitur*.[6] Furthermore, she argued that the affidavit requirement of 63 O.S. Supp.2003 § 1–1708.1E constituted an unconstitutional special law under the Oklahoma Constitution art. 5, §§ 46 and 59[7] and that it violated the constitutional guarantee of access to the courts contained in art. 2, § 6 of the Oklahoma Constitution and the Fourteenth Amendment to the United States Constitution.[8]

¶ 4 The trial court entered a final order of dismissal without prejudice to refiling on August 2, 2005. On August 25, 2005, Zeier filed her petition in error and motion to retain. The motion was granted on September 26, 2005. On October 25, 2005, the parties were ordered to file briefs. The order setting the briefing schedule also notified the Attorney General of the filing of the appeal attacking the constitutionality of a state statute. The order informed the Attorney General[9] and any interested *amici curiae*[10] that, if briefs were filed in the cause, they would be held to the same briefing schedule as the parties. The Attorney General declined briefing of the issues. The parties and the *amicus curiae*, Oklahoma State Medical Association (Association), filed their briefs-in-chief on November 14 and 15, 2005. The briefing cycle was completed on December 5, 2005, with the filing of the physician's reply.

6. Title 76 O.S.2001 § 21 provides:

"In any action arising from negligence in the rendering of medical care, a presumption of negligence shall arise if the following foundation facts are first established:

1. The plaintiff sustained any injury;

2. Said injury was proximately caused by an instrumentality solely within the control of the defendant or defendants;

3. Such injury does not ordinarily occur under the circumstances absent negligence on the part of the defendant.

If any such fact, in the discretion of the court, requires a degree of knowledge or skill not possessed by the average person, then in that event such fact must be established by expert testimony."

*Res ipsa loquitur* is a Latin phrase meaning "the thing speaks for itself" and has been recognized as applicable in the medical negligence setting. *Harder v. F.C. Clinton, Inc.*, 1997 OK 137, ¶ 8, 948 P.2d 298, *as corrected* (1998) [*Res ipsa loquitur* applicable in suit by administrator of estate of nursing home resident against nursing home.]; *Jackson v. Oklahoma Memorial Hosp.*, 1995 OK 112, ¶ 9, 909 P.2d 765, *rehearing denied* (1996) [*Res ipsa loquitur* applicable against attending and supervising faculty physicians.]; *Qualls v. United States Elevator Corp.*, 1993 OK 135, ¶ 7, 863 P.2d 457 [Maintenance company and hospital owning elevator could be sued under *res ipsa loquitur*.]; *Middlebrook v. Imler, Tenny & Kugler, M.D.'s, Inc.*, 1985 OK 66, ¶ 7, 713 P.2d 572.

7. The Okla. Const. art. 5, § 59 provides:

"Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."

8. Oklahoma's due process clause has a definitional sweep coextensive with its federal counterpart. *Barzellone v. Presley*, 2005 OK 86, ¶ 15, 126 P.3d 588; *Presley v. Board of County Comm'rs*, 1999 OK 45, ¶ 8, 981 P.2d 309. The United States Const., Amend. 14, § 1 provides in pertinent part:

" ... nor shall any state ... deny to any person within its jurisdiction the equal protection of the laws...."

The Okla. Const. art. 2, § 7 provides:

"No person shall be deprived of life, liberty, or property, without due process of law."

Both provisions contain an anti-discrimination component that affords protection against unreasonable or unreasoned classifications serving no important governmental objective. *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 2271, 2276, 60 L.Ed.2d 846 (1979). The capriciousness of the barrier created by 63 O.S. Supp.2003 § 1–1708.1E, see note 2, supra, is thrown sharply into focus by the fact that it may negate, upon an economic consideration, the opportunity for a determination by the trier of fact in but a single class of litigants—medical malpractice patients.

9. Title 12 O.S. Supp.2003 § 1653(C). On November 8, 2005, the Attorney General filed a notice with the Court declining to participate in the appeal.

10. Rule 1.12, Rules of the Supreme Court, 12 O.S.2001, Ch. 15, App. 1.

## DISCUSSION

**¶ 5 a. Title 63 O.S. Supp.2003 § 1–1708.1E is an unconstitutional special law prohibited by art. 5, § 46 of the Oklahoma Constitution.**

¶ 6 Zeier contends that 63 O.S. Supp.2003 § 1–1708.1E [11] violates art. 5, § 46 [12] in that it is a special law affecting only medical malpractice plaintiffs rather than all individuals seeking redress for negligent acts. The doctor insists that the statute is a general law encompassing all of the class—medical providers—and that it is general in its application. We disagree with the doctor.

■ ¶ 7 Art. 5, § 46 of the Oklahoma Constitution provides that the Legislature may not pass special laws affecting certain subjects. The constitutional provision contains twenty eight areas where general laws shall always be applicable. Included within the list of categories is a prohibition against regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts. The language utilized in art. 5, § 46 is a mandatory prohibition [13] against special laws—it provides in pertinent part:

"The Legislature **shall not** except as otherwise provided in this Constitution, **pass any local or special law** authorizing:

... Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts ..." [Emphasis provided.]

¶ 8 Title 63 O.S. Supp.2003 § 1–1708.1E requires that a plaintiff alleging medical malpractice attach an affidavit to the petition stating that the plaintiff: 1) has consulted with a qualified expert; 2) has obtained a written opinion from a qualified expert that the facts presented constitute professional negligence; and 3) has determined, on the basis of the expert's opinion, that the malpractice claim is meritorious and based on good cause. Plaintiffs may petition the trial court for an extension for filing the affidavit of merit not to exceed ninety days. The request must be accompanied by a showing of good cause. Although the defendant may obtain a copy of the expert's opinion, upon which the affidavit of merit is based, the opinion is inadmissable at trial and may not be utilized in discovery.

¶ 9 Both the doctor and the *amicus curaie* rely on *McCarroll v. Doctors General Hosp.,* 1983 OK 54, 664 P.2d 382, for the proposition that a statute covering all health care providers is a general rather than a special law. *McCarroll* considered a portion of a statute which provided a two-year statute of limitations [14] covering actions for damages arising from medical treatment. The *McCarroll* Court determined, because the limitations provision treated all health care providers equally, the Legislature had authority to group the providers into a class for special treatment. It held that the classification of health care providers for purposes of legislatively limiting the time within which an action against them could be brought was not such an arbitrary exercise of legislative discretion or lacking in a showing of good cause

---

11. Title 63 O.S. Supp.2003 § 1–1708.1E, see note 2, supra.

12. The Okla. Const. art. 5, § 46, see note 3, supra.

13. Generally, the use of "shall" signifies a command. *Cox v. State ex rel. Oklahoma Dept. of Human Services,* 2004 OK 17, ¶ 21, 87 P.3d 607; *United States through Farmers Home Admin. v. Hobbs,* 1996 OK 77, ¶ 7, 921 P.2d 338. Nevertheless, there may be times when the term is permissive in nature. *Cox v. State ex rel. Oklahoma Dept. of Human Services,* this note, supra; *Minie v. Hudson,* 1997 OK 26, ¶ 7, 934 P.2d 1082; *Texaco, Inc. v. City of Oklahoma City,* 1980 OK 169, ¶ 9, 619 P.2d 869.

14. Title 76 O.S.1982 § 18 provides:

"An action for damages for injury or death against any physician, health care provider or hospital licensed under the laws of this state, whether based in tort, breach of contract or otherwise, arising out of patient care, shall be brought within two (2) years of the date the plaintiff knew or should have known, through the exercise of reasonable diligence, of the existence of the death, injury or condition complained of; provided any action brought more than three (3) years from the date of the injury shall be limited to actual medical and surgical expenses incurred or to be incurred as a direct result of said injury, provided, however, the minority or incompetency when the cause of action arises will extend said period of limitation."

as to compel the Court to declare the statute unconstitutional.[15]

¶ 10 We considered the balance of the same statute, not originally addressed in *McCarroll*, five years later in *Reynolds v. Porter*, 1988 OK 88, 760 P.2d 816. The issue in *Reynolds* involved the attempt by the Legislature, in the same statutory provision considered by the *McCarroll* Court, to carve out of a single common-law class a subclass of actionable medical malpractice claims which could not be discovered with reasonable diligence until after three years. Essentially, by passing 73 O.S.1981 § 18,[16] the Legislature attempted to limit the applicability of the discovery rule in medical malpractice litigation. In *Reynolds*, we held that the three-year proviso in 76 O.S.1981 § 18 was a special statute of limitations absolutely prohibited by art. 5, § 46 of the Oklahoma Constitution. **Furthermore, we recognized that the class implicated constituted all actionable tort claims—not merely a subset of claims denominated as medical malpractice.**

¶ 11 The *Reynolds* Court attempted to eliminate the confusion between a constitutional attack brought under art. 5, § 46, containing specific legislative prohibitions, and art. 5, § 59,[17] allowing the Legislature to pass special laws when no general law is applicable. *Reynolds* explained that when an art. 5, § 46 issue arises—as we have here, there is one dispositive question which must be determined. The opinion provides:

"Under § 46 our constitutional review of a statute stops with the first prong: Is the statute a special or general law? If the statute is special, § 46 absolutely and unequivocally prohibits its passage by the legislature.... In other words, in § 46 our constitutional fathers isolated and set aside for protection against legislative tampering subjects to which general law *must* always be tailored.... *In a § 46 attack, the only issue to be resolved is whether a statute upon a subject enumerated in that section targets for different treatment less than an entire class of similarly situated persons or things."* [Citations omitted. Emphasis in original.]

The § 46 subject dealt with here is regulation of the practice or jurisdiction and changing the rules of evidence before the courts. Identical to the situation in *Reynolds*, the common law class implicated by 63 O.S. Supp.2003 § 1–1708.1E comprises all actionable tort claims. The class includes not only medical malpractice claims, but also all causes alleging negligence. No negligent tort claim, other than medical malpractice, is affected by the statutory affidavit requirement.

¶ 12 Here, we begin our review of 63 O.S. Supp.2003 § 1–1708.1E with the same deference to the statutory provision as the Court did in *Reynolds*. This Court recognizes that a statute is the solemn act of the Legislature.[18] In construing the constitutionality of a statute, we are not authorized to consider its propriety, wisdom, or practicability as a working proposition. Those questions are clearly and definitely established by our fundamental law to a certainty as functions of the legislative department.[19] We uphold the legislative enactment unless the statute is clearly, palpably and plainly inconsistent with the constitution.[20] This Court has a duty to interpret statutes to make their application constitutional rather than unconstitutional.[21] Nevertheless, just as it is the responsibility of the Legislature to make law and the Executive to carry those laws into effect, it is for the judiciary to interpret the

15. See also, *Rosson v. Coburn*, 1994 OK CIV APP 25, ¶¶ 14–15, 876 P.2d 731, *cert. denied* (1994).

16. Title 73 O.S.1982 § 18, see note 14, supra.

17. The Okla. Const. art. 5, § 59, see note 7, supra.

18. *Chicago, R.I. & P. Ry. Co. v. Mashore*, 1908 OK 95, ¶ 19, 96 P. 630.

19. *Matter of University Hospitals Auth.*, 1997 OK 162, ¶ 11, 953 P.2d 314, *rehearing denied* (1998).

20. *Reynolds v. Porter* see note 25, infra; *Jaworsky v. Frolich*, 1992 OK 157, ¶ 16, 850 P.2d 1052.

21. *Local 514 Transport Workers' Union of America v. Keating*, 2003 OK 110, ¶ 15, 83 P.3d 835; *Unit Petroleum Co. v. Oklahoma Water Resources Bd.*, 1995 OK 73, ¶ 6, 898 P.2d 1275.

same [22]—we are the independent department of government charged with the responsibility of protecting the constitution.[23]

¶ 13 The terms of art. 5, § 46 command that court procedure be symmetrical and apply equally across the board for an entire class of similarly situated persons or things.[24] **In a special laws attack under art. 5, § 46, the only issue to be resolved is whether a statute upon a subject enumerated in the constitutional provision targets for different treatment less than an entire class of similarly situated persons or things.**[25] The test is whether the provision fits into the structured regime of established procedure as part of a symmetrical whole. If an enactment injects asymmetry, the § 46 interdiction of special law has been offended.[26]

¶ 14 The affidavit of merit requirement immediately divides tort victims alleging negligence into two classes—those who pursue a cause of action in negligence generally and those who name medical professionals as defendants. In 1984, Oklahoma became a notice pleading state with the adoption of the Oklahoma Pleading Code.[27] The pleading code does not require negligence claimants generally to have an affidavit supporting the facts alleged and the anticipated basis for the right of recovery to be filed along with the petition.[28] Plaintiffs alleging anything other than medical negligence need only file a petition giving fair notice of the plaintiff's claim and the grounds upon which it rests.[29] These claimants have no affidavit requirement and may commence a cause of action with the filing of a petition,[30] while those alleging medical malpractice must obtain a professional opinion that their cause is meritorious as a prerequisite to pursuing suit or be subject to dismissal.

¶ 15 Not only does 63 O.S. Supp.2003 § 1–1708.1E divide tort victims on the basis of whether the victim is pursuing a general negligence claim or whether medical malpractice damage is alleged, it also necessitates the recognition of a subset of medical malpractice claimants relying on the legislatively codified doctrine of *res ipsa loquitor* for medical malpractice cases.[31] This is a doctrine we may not presume the Legislature intended to repeal by implication [32] in passing 63 O.S. Supp.2003 § 1–1708.1E.

¶ 16 The nature of a *res ipsa loquitor* claim often negates the necessity of expert testimo-

**22.** *Stephens Produce Co. v. Stephens*, 1958 OK 277, ¶ 0, 332 P.2d 674; *Baskin v. State*, 1925 OK 1, ¶ 10, 232 P. 388, 40 A.L.R. 941; *Williams v. City of Norman*, 1921 OK 337, ¶ 12, 205 P. 144.

**23.** *Wyatt–Doyle & Butler Engineers, Inc. v. City of Eufaula*, 2000 OK 74, ¶ 8, 13 P.3d 474.

**24.** *State ex rel. Macy v. Board of County Comm'rs of County of Oklahoma*, see note 26, infra; *Brown v. Ford*, 1995 OK 101, ¶ 7, 905 P.2d 223; *Simpson v. Dixon*, 1993 OK 71, ¶ 15, 853 P.2d 176; *Tate v. Browning–Ferris, Inc.*, 1992 OK 72, ¶ 18, 833 P.2d 1218, 21 A.L.R.5th 831.

**25.** *Reynolds v. Porter*, 1988 OK 88, ¶ 17, 760 P.2d 816.

**26.** *State ex rel. Macy v. Board of County Comm'rs of Oklahoma County*, 1999 OK 53, ¶ 14, 986 P.2d 1130. See also, *Johnson v. Tony's Town Mister Quik*, 1996 OK 138, ¶ 6, 915 P.2d 355.

**27.** *Fanning v. Brown*, 2004 OK 7, ¶ 19, 85 P.3d 841.

**28.** Affidavit of merit statutes are incompatible with notice pleading statutes. D. Kopstein, "An Unwise 'Reform' Measure," see note 1, supra.

**29.** Title 12 O.S.2001 § 2008 provides in pertinent part:
"A. CLAIMS FOR RELIEF. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain:
1. A short and plain statement of the claim showing that the pleader is entitled to relief . . ."
*Estate of Hicks*, 2004 OK 36, ¶ 15, 92 P.3d 88; *Finnell v. Seismic*, 2003 OK 35, ¶ 12, 67 P.3d 339.

**30.** Title 12 O.S.2001 § 2003 provides:
"A civil action is commenced by filing a petition with the court."
*Finnel v. Seismic*, see note 29, supra; *Ross v. Kelsey Hayes, Inc.*, 1991 OK 83, ¶ 6, 825 P.2d 1273.

**31.** Title 76 O.S.2001 § 21, see note 6, supra. *Sisson by and through Allen v. Elkins*, 1990 OK 123, ¶ 7, 801 P.2d 722.

**32.** *Strong v. Laubach*, 2004 OK 21, ¶ 9, 89 P.3d 1066; *Smith v. State Bd. of Educ.*, 1942 OK 188, ¶ 6, 126 P.2d 241; *Smith v. Marland*, 1936 OK 727, ¶ 14, 62 P.2d 477.

ny to prove the cause.[33] Therefore, if 63 O.S. Supp.2003 § 1–1708.1E is inapplicable to such claims—which may be brought against physicians and hospitals,[34] a third subsection of the whole of negligence plaintiffs is severed. With the enactment of the affidavit of merit statute, courts are required to classify three sets of negligence plaintiffs: 1) general negligence plaintiffs—not required to file an affidavit of merit; 2) medical malpractice plaintiffs to which the affidavit requirement of 63 O.S. Supp.2003 § 1–1708.1E applies; and 3) a third class comprised of medical malpractice plaintiffs who may not be subject to 63 O.S. Supp.2003 § 1–1708.1E because, generally, no professional opinion is required for recovery under *res ipsa loquitor.*

¶ 17 A statute is a "special law" where a part of an entire class of similarly affected persons is separated for different treatment.[35] Just as the discovery rule considered in *Reynolds* suffered from underinclusiveness,[36] so does 63 O.S. Supp.2003 § 1–1708.1E—it sets aside a subset of negligence plaintiffs for different procedural and evidentiary treatment based on the type of action they pursue.[37] The professional affidavit requirement of 63 O.S. Supp.2003 § 1–1708.1E has no counterpart in the general law of tort claims. Only medical malpractice claimants are burdened with the necessity of obtaining a medical opinion to support the filing of a petition in the district court. Furthermore, only medical malpractice defendants, not negligence defendants generally, are granted what is a mandated discovery privilege before a petition for recovery will ever be heard—although the statute prohibits the admitting of the expert's opinion at trial or its use in discovery,[38] it allows the defendant to obtain a copy of the same.[39] This is precisely the vice that the Oklahoma Constitution and this Court have long guarded against—the granting of preference to some and the denial of equality to a class.[40]

¶ 18 By mandating uniformity of procedure, the terms of art. 5, § 46 command that all citizens of the state shall have equal access to legal institutions for application of the general ordinary forensic process. Medical malpractice plaintiffs constitute nothing more than a subset of parties pursuing a cause under negligence standards. Because 63 O.S. Supp.2003 § 1–1708.1E [41] impacts less than an entire class of similarly situated claimants—medical malpractice claimants are severed from all tort victims with the possibility of the creation of a third class if the doctrine of *res ipsa loquitor* applies, the statute is underinclusive and special. We determine that the statute violates the absolute and unequivocal prohibition of the Oklahoma Constitution art. 5, § 46 against the passing of special laws regulating the practice or jurisdiction of, or changing the rules of evi-

**33.** Title 76 O.S.2001 § 21, see note 6, supra; *Harder v. F.C. Clinton, Inc.,* 1997 OK 137, ¶ 14, 948 P.2d 298, *as corrected* (1998); *Boxberger v. Martin,* 1976 OK 78, ¶ 14, 552 P.2d 370.

**34.** *Jackson v. Oklahoma Memorial Hosp.,* see note 6, supra; *Middlebrook v. Imler, Tenny & Kugler, M.D.'s, Inc.,* see note 6, supra.

**35.** *Grant v. Goodyear Tire & Rubber Co.,* 2000 OK 41, ¶ 5, 5 P.3d 594, *rehearing denied* (2000); *Reynolds v. Porter,* see note 25, supra.

**36.** See also, *Johnson v. District Court of Oklahoma County,* 1987 OK 47, ¶ 5, 738 P.2d 151 [This Court refused to single out medical and hospital malpractice suits for some special discovery rules that were not available in other death or personal injury litigation.]; *Mowles v. Hillcrest Health Center,* 1991 OK CIV APP 118, ¶ 6, 832 P.2d 24, *cert. denied* (1992), relying on *Reynolds v. Porter,* see note 25, supra, and holding that a statute isolating minors injured by any type of negligence other than medical malprac-

tice from all other minor claimants was unconstitutional under art. 2, § 46, see note 3, supra.

**37.** To the same effect, see *State ex rel. Macy v. Board of County Comm'rs of County of Oklahoma,* note 26, supra, in which we determined that the Legislature could not, for the sake and in the interest of advancing the public policy's protected goal of achieving certainty for the budget's finality, treat as two classes taxpayers and tax consumers.

**38.** Title 63 O.S. Supp.2003 § 1–1708.1E(A)(2)(3), see note 2, supra.

**39.** *Id.* at subsection (C)(1)(a).

**40.** *Barrett v. Board of Comm'rs of Tulsa County,* 1939 OK 68, ¶ 0, 90 P.2d 442; *Jack v. State,* see note 91, infra.

**41.** Title 63 O.S. Supp.2003 § 1–1708.1E, see note 2, supra.

dence in judicial proceedings or inquiry before the courts.[42]

## ¶ 19 b. Title 63 O.S. Supp.2003 § 1–1708.1E creates an unconstitutional monetary barrier to the access to courts guaranteed by the Oklahoma Constitution art. 2, § 6.

█ ¶ 20 The physician and the Association assert that the affidavit requirement of 63 O.S. Supp.2003 § 1–1708.1E [43] creates no bar to access to judicial resolution of medical malpractice cases. The patient argues that the statutorily created requirement for the payment of professional services as a prerequisite to the filing of a petition alleging medical malpractice violates the court access guaranteed by art. 2, § 6 of the Oklahoma Constitution.[44] We agree with the patient.

¶ 21 The Oklahoma Legislature implemented the Affordable Access to Health Care Act (Health Care Act), 63 O.S. Supp.2003 § 1–1708.1A et seq. for the purpose of implementing reasonable, comprehensive reforms designed to improve the availability of health care services while lowering the cost of medical liability insurance and ensuring that persons with meritorious injury claims receive fair and adequate compensation.[45] Although

statutory schemes similar to Oklahoma's Health Care Act do help screen out meritless suits, the additional certification costs have produced a substantial and disproportionate reduction in the number of claims filed by low-income plaintiffs.[46] The affidavit of merit provisions front-load litigation costs and result in the creation of cottage industries of firms offering affidavits from physicians for a price.[47] They also prevent meritorious medical malpractice actions from being filed. The affidavits of merit requirement obligates plaintiffs to engage in extensive pre-trial discovery to obtain the facts necessary for an expert to render an opinion resulting in most medical malpractice causes being settled out of court during discovery.[48] Rather than reducing the problems associated with malpractice litigation, these provisions have resulted in the dismissal of legitimately injured plaintiffs' claims based solely on procedural, rather than substantive, grounds.[49]

¶ 22 Another unanticipated result of statutes similar to Oklahoma's scheme has been the creation of a windfall for insurance companies who benefit from the decreased number of causes they must defend but which are not required to implement post-tort reform rates decreasing the cost of medical malprac-

---

**42.** The Okla. Const. art. 5, § 46, see note 3, supra. We need not determine whether 63 O.S. Supp.2003 § 1–1708.1E, see note 2, supra, is also an impermissible special law under art. 5, § 59 of the Oklahoma Constitution, see note 7, supra, as the Court did in *Reynolds v. Porter*, see note 25, supra. *City of Enid v. Public Employees*, 2006 OK 16, ¶ 26, 133 P.3d 281 is not contrary to our holding here. Unlike in *City of Enid*, we have been pointed to no provision of the constitution which would take this matter outside the general prohibition against special laws.

**43.** Title 63 O.S. Supp.2003 § 1–1708.1E, see note 2, supra.

**44.** The Okla. Const. art. 2, § 6, see note 5, supra.

**45.** Title 63 O.S. Supp.2003 § 1–1708.1B providing in pertinent part:
"... B. PURPOSE. It is the purpose of the Affordable Access to Health Care Act to implement reasonable, comprehensive, and effective medical liability reforms designed to:
1. Improve the availability of health care services;
2. Lower the cost of medical liability insurance;

3. Ensure that persons with meritorious health care injury claims receive fair and adequate compensation; and
4. Improve the fairness and cost-effectiveness of this state's current medical liability system to resolve disputes over, and provide compensation for, medical liability."

**46.** D. Kopstein, "An Unwise 'Reform' Measure," see note 1, supra. See also, C. Kozak, "A Review of Federal Medical Malpractice Tort Reform Alternatives," 19 Seton Hall Legis.J. 599, 642 (2003) [Certificates of merit may result in a denial of court access if drafted in such a way as to impose significant burdens on individuals seeking to sue their health care provider.].

**47.** K. Frazier, "Arkansas's Civil Justice Reform Act of 2003: Who's Cheating Who?," 57 Ark. L.Rev. 651, 689 (2004).

**48.** *Hinchman v. Gillette*, see note 64, infra.

**49.** M. Stroub, "The Unforseen Creation of a Procedural Minefield–New Jersey's Affidavit of Merit Statute Spurs Litigation & Expense in its Interpretation & Application," 34 Rutgers L.J. 279, 282 (2002).

tice insurance to physicians.[50] These companies happily pay less out in tort-reform states while continuing to collect higher premiums from doctors and encouraging the public to blame the victim or attorney for bringing frivolous lawsuits.[51]

**50.** K. Frazier, "Arkansas's Civil Justice Reform Act of 2003: Who's Cheating Who?," see note 47 at p. 693, supra. See also, C. Sharkey, "Unintended Consequences of Medical Malpractice Damages Caps," 80 N.Y.U.L.Rev. 391, 404 (2005).

**51.** J. Edgar, "Doctor v. Attorney: Why are Attorneys & Injured Patients Being Blamed for the Rising Costs of Healthcare? Instead of Tort Reform, Why Medical Reform is a Better Solution," 73 UMKC L.Rev. 773 (2005); T. Trimble, "The Maryland Survey: 1994–1995 Recent Developments The Maryland General Assembly," 55 Md. L.Rev. 893, 907 (1996) [In 1987, the year after the certificate of merit requirement went into effect, the medical malpractice filing rate declined approximately 36% from the previous year. By 1996, however, filing rates had nearly returned to their pre-certificate levels.]. Furthermore, the majority of medical malpractice trials end with defense verdicts and rational attorneys do not file malpractice cases that have not been thoroughly researched and "blessed" by a qualified expert. D. Kopstein, "An Unwise 'Reform' Measure," see note 1, supra.

**52.** While some courts place all tort claims involving the physical handling and safety of patients within the ambit of the medical malpractice statutes, other jurisdictions have found the statutes inapplicable to claims based on failure to: adequately monitor a patient who was weakened by medication or surgery; prevent a fall from a bed or a wheelchair; raise rails on a patient's bed; or handle the patient appropriately. Even when the tort claim is related to patient treatment, there is considerable litigation over whether claims involving unauthorized medical procedures, lack of informed consent, failure to reveal past malpractice, premises liability or equipment failure should be filed in accordance with the malpractice statutes. Other areas in which the courts disagree as to the application of affidavit of merit statutes in medical malpractice litigation include: negligent selection, training or supervision of hospital staff; unauthorized disclosure of confidential information; and procedures for committing a patient. The courts have even been asked to determine whether unfair trade practices claims will fall within the subject of the statutes. Annot., "What Patient Claims Against Doctor, Hospital, or Similar Health Care Provider Are Not Subject to Statutes Specifically Governing Actions & Damages for Medical Malpractice," 89 A.L.R.4th 887, see generally, § 2 (2005).

**53.** Matter of Application of Sitter, see note 56, infra; Szydel v. Markman, see note 66, infra;

¶ 23 Courts are divided on which claims against a doctor, a hospital, or a similar health care provider will be subject to the statutes.[52] Where jurisdictions have determined that affidavit of merit statutes are constitutional,[53] courts have had to deter-

Hinchman v. Gillette, see note 64, infra; Jernigan v. Langley, see note 71, infra; Grossman v. Brown, see note 61, infra; Woodard v. Custer, see note 66, infra; Galik v. Clara Maass Medical Center, see note 55, infra; In re Hall, see note 56, infra; De Luna v. Saint Elizabeth's Hosp., 147 Ill.2d 57, 167 Ill.Dec. 1009, 588 N.E.2d 1139, 1146 (1992); Mahoney v. Doerhoff Surgical Servs., Inc., 807 S.W.2d 503, 512 (Mo.1991); Nutting v. Associates in Obstetrics & Gynecology, P.C., see note 57, infra; Bhansali v. Moncada, see note 59, infra; Behar v. Coren, see note 61, infra; Paley v. Maraj, see note 61, infra; Beauchamp v. Zimmerman, see note 62, infra; Kirkaldy v. Rim, see note 75, infra; King v. Dodge County Hosp. Auth., see note 60, infra; Saffian v. Simmons, see note 65, infra; Harris v. Neuburger, see note 58, infra; O'Hara v. Randall, see note 63, infra; In re Covenant Medical Ctr., see note 64, infra; Hodge v. Cheek, 64 Ohio App.3d 296, 581 N.E.2d 581 (1989), dismissed, 48 Ohio St.3d 708, 550 N.E.2d 479 (1990), impliedly overruled, Ohio Hosp. Ins. Co. v. Physicians Ins. Co., 1993 WL 548438 (Ohio App.1993).

The Association makes much of the fact that the Missouri Court in Mahoney v. Doerhoff Surgical Servs., Inc., this note, supra, upheld an affidavit of merit statute against a constitutional attack and that Mahoney was cited by this Court in Rollings v. Thermodyne Indus., Inc., 1996 OK 6, ¶ 20, 910 P.2d 1030. We note that Rollings did not involve a merit of affidavit challenge. Rollings holds that a private agreement to submit future disputes to statutory arbitration does not violate the right of court access. Furthermore, since our decision in Rollings, it is noteworthy that Mahoney has been distinguished and criticized by the Missouri Courts. See, Budding v. SSM Healthcare Sys., 19 S.W.3d 678, 680 (Mo. 2000); Mello v. Giliberto, 73 S.W.3d 669, 678 (Mo.App.2002), rehearing/transfer denied (2002). Other courts have recognized the unconstitutionality of affidavit of merit statutes. Aldana v. Holub, 381 So.2d 231, 237 (Fla.1980); Carson v. Maurer, 120 N.H. 925, 424 A.2d 825, 837, 12 A.L.R.4th 1 (1980); McCoy v. Western Baptist Hosp., 628 S.W.2d 634–35 (Ky.App.1981); Arneson v. Olson, 270 N.W.2d 125, 136–37 (N.D. 1978); Graley v. Satayatham, 74 O.O.2d 316, 343 N.E.2d 832, 836 (1976); Anderson v. Assimos, 146 N.C.App. 339, 553 S.E.2d 63, 68 (2001), judgment vacated in part (as relating to res ipsa loquitur)/appeal dismissed, 356 N.C. 415, 572 S.E.2d 101 (2002). See also, Hoem v. State, 756 P.2d 780 (Wyo.1988); Farley v. Engelken, 241 Kan. 663, 740 P.2d 1058, 1067, 74 A.L.R.4th 1 (1987); Austin v. Litvak, 682 P.2d 41, 54, 50

mine:[51] whether an affidavit of merit meets statutory requirements or whether another document may be substituted as in substantial compliance with statutory directives;[55] whether the affidavit requirement justifies pre-complaint discovery;[56] whether a patient alleging the failure to inform concerning the use of an intrauterine device must comply with the affidavit requirement;[57] whether a cause may be reopened for the late filing of an affidavit[58] or to add a new count;[59] whether a battery arising from a nurse's ignoring a patient's request to stop medical treatment requires a supportive expert affidavit;[60] whether the expert utilized for the affidavit requirement is qualified to give an opinion based on substantial professional experience;[61] whether the statute presents a procedural versus a substantive element of the claim;[62] whether the amendment of a complaint will extend the required time period for filing a certificate of merit;[63] whether an individual submitting an insufficient affidavit of merit must be given the opportunity to amend;[64] whether the failure to file an affidavit complying with statutory requirements excuses a defendant from filing a response;[65] whether affidavits of merit may be required in causes based on the doctrine of *res ipsa loquitur*;[66] whether the affidavit constitutes a good faith effort to comply with statutory requirements;[67] whether multiple affidavits will be considered together to meet the certificate of merit requirement;[68]

A.L.R.4th 225 (Colo.1984); *Boucher v. Sayeed*, 459 A.2d 87, 94 (R.I.1983); *Jiron v. Mahlab*, 99 N.M. 425, 659 P.2d 311, 313 (1983); *Wright v. Central Du Page Hosp. Ass'n*, 63 Ill.2d 313, 347 N.E.2d 736, 743, 80 A.L.R.3d 566 (1976); *People ex rel. Christiansen v. Connell*, 2 Ill.2d 332, 118 N.E.2d 262, 267 (1954); *Mattos v. Thompson*, 491 Pa. 385, 421 A.2d 190, 196 (1980); D. Kopstein, "An Unwise 'Reform' Measure," see note 1, supra.

54. Costs of medical malpractice litigation have increased with certification requirements by spawning "satellite" disputes regarding compliance with the technical aspects of the certificate of merit requirements. D. Kopstein, "An Unwise 'Reform' Measure," see note 1, supra.

55. *Galik v. Clara Maass Medical Center*, 167 N.J. 341, 771 A.2d 1141, 1148 (2001); R. Peckar, *New Jersey Practice Series, Construction Law § 2.10*, (2004).

56. *Matter of Application of Sitter*, 35 Fed. R.Serv.3d 799, 167 F.R.D. 80, 82 (D.Minn.1996); *In re Hall*, 147 N.J. 379, 688 A.2d 81, 87 (1997).

57. *Nutting v. Associates in Obstetrics & Gynecology, P.C.*, 130 A.D.2d 870, 515 N.Y.S.2d 926–27 (1987) [Recognizing need for affidavit in medical negligence causes generally but not required under facts presented.].

58. *Harris v. Neuburger*, 2005 PA Super 228, ¶¶ 10–11, 877 A.2d 1275.

59. *Bhansali v. Moncada*, 275 Ga.App. 221, 620 S.E.2d 404 (2005), *reconsideration denied* (2005), *cert. denied* (2006).

60. *King v. Dodge County Hosp. Auth.*, 274 Ga. App. 44, 616 S.E.2d 835, 837 (2005).

61. *Grossman v. Brown*, 470 Mich. 593, 685 N.W.2d 198, 201 (2003); *Behar v. Coren*, 21 A.D.3d 1045, 803 N.Y.S.2d 629 (2005), *leave to appeal denied*, 6 N.Y.3d 705, 845 N.E.2d 466, 812 N.Y.S.2d 34 (2006); *Paley v. Maraj*, 910 So.2d 282 (Fla.App.2005) [OB/GYN found not qualified to give opinion where child was stillborn.].

62. *Beauchamp v. Zimmerman*, 359 Ill.App.3d 143, 295 Ill.Dec. 671, 833 N.E.2d 877, 882 (2005), *opinion modified* (2005), *rehearing denied* (2005), *appeal denied*, 217 Ill.2d 558, 300 Ill.Dec. 363, 844 N.E.2d 35 (2005) [The merit of affidavit requirement is a pleading requirement rather than a substantive element of the claim. Such procedural disparateness is forbidden by the Oklahoma Const., art. 5, § 46, see note 3, supra. *Brown v. Ford*, 1995 OK 101, ¶ 7, 905 P.2d 223.]. But see, *McDougall v. Schanz*, 461 Mich. 15, 597 N.W.2d 148, 154 (1999).

63. *O'Hara v. Randall*, 2005 PA Super 242, ¶ 15, 879 A.2d 240 (2005).

64. *Hinchman v. Gillette*, 217 W.Va. 378, 618 S.E.2d 387 (2005); *In re Covenant Medical Ctr.*, 167 S.W.3d 919–20 (Tex.App.2005), *mandamus denied* (2006).

65. *Saffian v. Simmons*, 267 Mich.App. 297, 704 N.W.2d 722, 728–29 (2005).

66. *Szydel v. Markman*, 121 Nev. 453, 117 P.3d 200, 204 (2005), *rehearing denied* (2005), *reconsideration en banc denied* (2005); *Hubbard ex rel. Hubbard v. Reed*, 168 N.J. 387, 774 A.2d 495, 500 (2001); *Woodard v. Custer*, 473 Mich. 1, 702 N.W.2d 522, 525 (2005), *rehearing denied*, 474 Mich. 1201, 703 N.W.2d 188 (2005).

67. *Davis v. Spring Branch Medical Ctr., Inc.*, 171 S.W.3d 400, 407 (Tex.App.2005); *Sandles v. Howerton*, 163 S.W.3d 829, 834 (Tex.App.2005).

68. *Hillcrest Baptist Medical Ctr. v. Wade*, 172 S.W.3d 55, 60 (Tex.App.2005), *review granted* (2006).

whether extensions will be allowed to cure a defective affidavit;[69] what amounts to service of an affidavit of merit and whether an exception will lie to the general service requirements;[70] whether there is a statutory deadline for filing a motion to dismiss if the expert report is filed untimely;[71] what will constitute good faith in requesting an extension for filing the affidavit;[72] whether the affidavit filed is sufficient to give the treating physician notice;[73] whether allegations concerning the failure to provide a bedpan or assistance to a restroom require the filing of an affidavit of merit;[74] whether an affidavit of merit which fails to meet the statutory requirements will toll the statute of limitations;[75] whether the failure to provide a special certification of notary for an out-of-state affidavit until after the statute of limitations runs merits dismissal;[76] and whether affidavits of merit may be considered as summary judgment evidence.[77]

¶ 24 This Court has not been immune to such related litigation. In *Gaines v. Comanche County Medical Hosp.*, 2006 OK 39, 143 P.3d 203, we were required to determine whether a registered nurse was qualified to give expert testimony as to practices of nurses and the standard of care applicable to the prevention, cause, and treatment of bedsores. We aligned ourselves in *Gaines* with the determinations of all other jurisdictions considering the issue holding that the registered nurse's expertise made her qualified to give such expert testimony and to express her opinion.

¶ 25 The Okla. Const. art. 2, § 6 provides: "The **courts of justice of the State shall be open to every person,** and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; **and right and justice shall be administered without sale, denial, delay, or prejudice.**" [Emphasis provided.] The clear language of art. 2, § 6 requires that the courts must be open to all on the same terms without prejudice. The framers of the Constitution intended that all individuals, without partiality, could pursue an effective remedy designed to protect their basic and fundamental rights.[78] Although we recognize that the Legislature may facilitate speedy resolution of differences, legislation cannot be used to deny the constitutional guarantee of court access—a fundamental right. Therefore, this Court strictly scrutinizes actions which deny such opportunity.[79]

¶ 26 Access to courts must be available to all through simple and direct means and the right must be administered in favor of justice rather than being bound by technicalities.[80] Claimants may not have the fundamental right of court access withheld

**69.** *Hardy v. Marsh,* 170 S.W.3d 865, 870 (Tex. App.2005).

**70.** *Kendrick v. Garcia,* 171 S.W.3d 698, 703 (Tex. App.2005), *rehearing overruled* (2005), *review denied* (2006), *rehearing of petition for review filed* (2006).

**71.** *Jernigan v. Langley,* 111 S.W.3d 153, 156 (Tex. 2003).

**72.** *Scott v. Beechnut Manor,* 171 S.W.3d 338, 342 (Tex.App.2005), *rehearing overruled* (2005), *review denied* (2006).

**73.** *Bonati v. Allen,* 911 So.2d 285–86 (Fla.App. 2005).

**74.** *Torres v. Memorial Hermann Hosp. Sys.,* 186 S.W.3d 43 (Tex.App.2005).

**75.** *Kirkaldy v. Rim,* 266 Mich.App. 626, 702 N.W.2d 686, 691 (2005).

**76.** *Apsey v. Memorial Hosp.,* 266 Mich.App. 666, 702 N.W.2d 870, 877 (2005). See also, on the issue of whether an out of state professional may even be appropriate to give an opinion on standard of care, Annot., *"Malpractice Testimony: Competency of Physician or Surgeon from One Locality to Testify, in Malpractice Case, as to Standard of Care Required of Defendant Practicing in Another Locality,"* 37 A.L.R.3d 420 (1972–2005).

**77.** *Cunningham v. Columbia,* 185 S.W.3d 7 (Tex. App.2005), *rehearing overruled* (2006).

**78.** *Johnson v. Tony's Town Mister Quik,* see note 26 at ¶¶ 5–6, supra; *Woody v. State ex rel. Oklahoma Dept. of Corrections,* see note 100, infra; *Moses v. Hoebel,* see note 81, infra.

**79.** *Rollings v. Thermodyne Indus., Inc.,* see note 59, supra; *Thayer v. Phillips Petroleum Co.,* 1980 OK 95, ¶ 13, 613 P.2d 1041; *Alford v. Garzone,* 1998 OK CIV APP 105, ¶ 10, 964 P.2d 944.

**80.** *Woody v. State ex rel. Dept. of Corrections,* see note 100, infra.

for nonpayment of some liability [81] or conditioned on coercive collection devices.[82] Here, medical malpractice plaintiffs are singled out and must stand the cost of an expert opinion, which may range from $500 to $5,000,[83] before they may proceed to have their rights adjudicated.[84] In at least one instance, an affidavit of merit cost the litigant ·$12,000.[85] A statute that so conditions one's right to litigate impermissibly denies equal protection [86] and closes the court house doors to those financially incapable of obtaining a prepetition medical opinion.[87] Therefore, we determine that 63 O.S. Supp.2003 § 1–1708.1E [88] creates an unconstitutional monetary barrier to the access to courts guaranteed by art. 2, § 6 of the Oklahoma Constitution.[89]

¶ 27 Our determination relating to court access is supported by our recent decision in *Barzellone v. Presley*, 2005 OK 86, ¶ 39, 126 P.3d 588 holding that the Legislature's imposition of a $349.00 jury fee did not violate the Oklahoma Constitution art. 2, § 19 providing that the right to jury trial shall be and remain inviolate or the guarantee of access to courts found in the Oklahoma Constitution art. 2, § 6. In *Barzellone*, we noted that a $349.00 fee charge appeared to be the highest challenged and upheld nationally, indicating that the fee bordered on being excessive.

Furthermore, we recognized that the Legislature could not create a fiscal barrier so unreasonable as to eliminate a constitutional right.

¶ 28 Here, the Legislature has not imposed a set fee for a professional's opinion to support the affidavit of merit. Nevertheless, the statute necessarily conditions the medical malpractice plaintiff's right to judicial review on the ability to acquire an expert's opinion at a cost of between $500.00 and $5,000.00 [90] —well above the borderline fee of $349.00 examined in *Barzellone.*

## CONCLUSION

¶ 29 A general law encompasses all of a class. A special law is one that rests on a false or deficient classification. It creates preference and establishes inequity.[91] Art. 5, § 46 of the Oklahoma Constitution absolutely prohibited special laws "[r]egulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts ..." Not only does the requirement for providing an affidavit of merit in medical malpractice causes create a needless burden, it is redundant.[92] With each filing, Oklahoma attorneys and *pro se* parties certify that, to the best of the person's knowledge, information, and belief,

81. *Rollings v. Thermodyne Indus., Inc.,* see note 53, supra; *Moses v. Hoebel,* 1982 OK 26, ¶ 11, 646 P.2d 601; *Jeffries v. State,* 1913 OK CR 146, ¶ ——, 9 Okla.Crim. 573, 132 P. 823.

82. *Moses v. Hoebel,* see note 81, supra. See also, *State v. Waterfield,* 1933 OK 546, ¶ 0, 29 P.2d 24.

83. M. Stroub, "The Unforeseen Creation of a Procedural Minefield—New Jersey's Affidavit of Merit Statute Spurs Litigation & Expense in its Interpretation & Application," see note 49 at p. 315, supra; A. Karlin, "Medical Malpractice Legislation," 2003–Jan. W.Va. Law. 24,–25; H. Miller, "Changes Made in Juries, Settlements, Trial Procedures, Liability Concepts,", 73 Nan. N.Y. St. B.J. 26, 29 (2001).

84. Furthermore, plaintiffs' lawyers often will not file a cause where the claim is a mere $10,000— indicating that such a cause is not sufficient to warrant the cost of obtaining an expert to provide an affidavit. M. Stroub, "The Unforeseen Creation of a Procedural Minefield—New Jersey's Affidavit of Merit Statute Spurs Litigation & Expense in its Interpretation & Application," see note 49 at p. 315, supra.

85. *Couri v. Gardner,* 173 N.J. 328, 801 A.2d 1134, 1137 (2002).

86. *Moses v. Hoebel,* see note 81, supra.

87. See, *Woody v. State ex rel. Dept. of Corrections,* note 100, infra; *Moses v. Hoebel,* see note 81, supra.

88. Title 63 O.S. Supp.2003 § 1–1708.1E, see note 2, supra.

89. The Okla. Const. art. 2, § 6, see note 5, supra.

90. See ¶ 26 and accompanying footnotes, supra.

91. *Jack v. State,* 1937 OK 394, ¶ 8, 82 P.2d 1033; *Barrett v. Board of Comm'rs of Tulsa County,* 1939 OK 68, ¶ 0, 90 P.2d 442.

92. K. Frazier, "Arkansas's Civil Justice Reform Act of 2003: Who's Cheating Who?," see note 47 at 685, supra.

formed after a reasonable inquiry, that the cause is: not presented for an improper or frivolous purpose; the claims, defenses and other contentions are warranted by existing law or by a nonfrivolous argument for the law's extension, modification or reversal of established law; factual assertions have or are likely to have evidentiary support; and denials are warranted on the evidence or the lack thereof.[93]

¶ 30 Only plaintiffs alleging medical malpractice are subject to the statutory requirement of providing an affidavit of merit upon the filing of a cause. When a remedy is afforded by general law, it may not be granted to some and capriciously or arbitrarily denied to others.[94] The impact of the affidavit requirement on those, like the patient here, is invidious. Zeier's cause was dismissed and her access to the trial court's portals denied for failure to obtain a medical expert's opinion which will be inadmissible as evidence at trial, useless as an evidentiary tool and which she may not need to prove her cause pled under the auspices of *res ipsa loquitor*. Title 63 O.S. Supp.2003 § 1–1708.1E [95] is an unconstitutional special law prohibited by art. 5, § 46 [96] of the Oklahoma Constitution.

¶ 31 This Court does not correct the Legislature, nor do we take upon ourselves the responsibility of legislating by judicial fiat. However, we are compelled to apply Oklahoma's Constitution.[97] It has long been the policy of the Oklahoma Constitution, the statutes and this Court to open the doors of justice to every person without distinction or discrimination for redress of wrongs and reparation for injuries.[98] Although art. 2, § 6 does not promise a remedy for every wrong, it requires that a complainant be given access to court when a wrong suffered is recognized in the law.[99]

¶ 32 Treating medical malpractice plaintiffs with rules inapplicable to all other negligence claimants interjects a degree of arbitrariness which sabotages equal access to the courts.[100] Section 1–1708.1E creates the potential for a medical expert to usurp the functions of the judiciary and the trier of fact. The requirement that a medical malpractice claimant obtain a professional's opinion that the cause is meritorious at a cost of between $500.00 and $5,000.00 [101] creates an unconstitutional monetary barrier to the access to courts guaranteed by art. 2, § 6 of the Oklahoma Constitution.[102]

**93.** Title 12 O.S. Supp.2004 § 2011(B).

**94.** *Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 876, 31 L.Ed.2d 36 (1972); *Lecates v. Justice of Peace Court No. 4*, 637 F.2d 898, 907 (3rd Cir. 1980); *Compton v. Naylor*, 392 F.Supp. 575, 577 (N.D.Tex.1975).

**95.** Title 63 O.S. Supp.2003 § 1–1708.1E, see note 2, supra.

**96.** The Okla. Const. art. 5, § 46, see note 3, supra.

**97.** *State ex rel. Macy v. Board of County Comm'rs*, see note 26, supra; *Baskin v. State*, 1925 OK 1, ¶ 0, 232 P. 388, 40 A.L.R. 941; *Horvat v. State ex rel. Dept. of Corrections*, 2004 OK CIV APP 59, ¶ 10, 95 P.3d 190, *cert. denied*, 2004 OK 52, 94 P.3d 80 (2004), *released for publication by order of the Supreme Court of Oklahoma* (2004).

**98.** *Fiedeer v. Fiedeer*, 1914 OK 672, ¶ 0, 42 Okla. 124, 140 P. 1022.

**99.** *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.*, 1989 OK 139, ¶ 16, 782 P.2d 915; *Reeves v. Ille Elec. Co.*, 170 Mont. 104, 551 P.2d 647, 650 (1976).

**100.** *Woody v. State ex rel. Dept. of Corrections*, 1992 OK 45, ¶ 10, 833 P.2d 257.

**101.** See ¶ 26 and accompanying footnotes, supra.

**102.** The Okla. Const. art. 2, § 6, see note 5, supra. Decisions from our sister states are split on whether affidavit of merit statutes similar to 63 O.S. Supp.2003 §§ 1–1708.1E, see note 2, supra, can withstand constitutional attack. See discussion and cases, note 53, supra. We recognize that our holdings today align us with what may be currently the minority position. Notwithstanding, this Court's determinations with regard to the state constitutional questions are based on Oklahoma law which provides *bona fide*, separate, adequate and independent grounds for our decision. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983). State law may afford greater rights than those guaranteed by the sovereign or other jurisdictions. *Michigan v. Long*, this note, supra; *Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 100 S.Ct. 2035, 2040–41, 64 L.Ed.2d 741 (1980); *In re Initiative Petition No. 349*, 1992 OK 122, ¶ 35, 838 P.2d 1, *cert. denied*, 506 U.S. 1071, 113 S.Ct. 1028, 122 L.Ed.2d 173 (1993); *Turner v. City of Lawton*, 1986 OK 51, ¶ 19, 733 P.2d 375, *cert. denied*, 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987).

REVERSED.

WATT, C.J., WINCHESTER, V.C.J., HARGRAVE, EDMONDSON, COLBERT, JJ. concur.

OPALA, J. concurs in judgment.

KAUGER, J. concurs in result.

TAYLOR, J., concurring in result:

¶1 I agree that 63 O.S. Supp.2003 § 1–1708.1E is an unconstitutional special law which is clearly prohibited by art. 5, § 46 of the Oklahoma Constitution.

¶2 However, I do not join further in the majority opinion. Accordingly, I concur in result.

LAVENDER, J. dissents.